In the Matter of the Estate of ARTHUR RYLE, Deceased.*

Surrogate's Court, New York County, January 24, 1939.

*Putney, Twombly & Hall* [*Henry B. Twombly* of counsell, for the executors, petitioners.

*Mitchell, Taylor, Capron & Marsh*, for the successor trustee under agreement with deceased, respondent.

DELEHANTY, S. In this accounting proceeding the petition asks for the approval of an allowance to counsel for services in connection with a deficiency assessment of estate taxes made by the Internal Revenue Department. The parties agree that the amount proposed is reasonable, and so the court approves it.

The major controversy in the accounting proceeding concerns the measure of the liability for estate taxes and penalties thereon of the trustee of an *inter vivos* trust created by deceased some eight years before his death. Basically the trustee denies that the trust fund is chargeable with either principal or interest of the tax. Even assuming liability for part of the tax principal it denies its liability for any but a very small amount of the penalty imposed, and disagrees with the executors respecting the computation of its share of the penalty. It does not disagree with the figure apportioned by the executors to the trust fund as the principal of the estate tax allocable to the trust fund if the fund is to be held chargeable with any part of the estate tax principal.

The fundamental denial of liability for any part of the tax presents the question whether the principal of an irrevocable trust created before section 124 of the Decedent Estate Law was enacted can be compelled under the section to contribute to the tax. The trustee argues that if section 124 is given a construction which brings within its operation such an irrevocable trust it must be held to this extent unconstitutional because it deprives the trustee and the beneficiaries of the irrevocable trust of due process under both State and Federal Constitutions and unconstitutionally impairs the obligation of a contract in violation of the Federal Constitution. These contentions require the court to consider whether section 124 of the Decedent Estate Law created or purported to create new property rights and whether it is intended to operate independently of the provisions of the Decedent Estate Law relating to the devolution of property and independently of the Tax Law. The court is of the view that the section is merely an instrumentality for the administration of the Tax Law and of estates generally.

It is a procedural and administrative enactment only. Once it be established that a particular body of property passing by reason of a death is subject to an estate tax, whether Federal or State, the terms of section 124 of the Decedent Estate Law become applicable. Here there is no dispute by the trustee of the *inter vivos* trust fund that the fund was properly included by the Federal taxing authorities in the gross property to be taxed. Neither is it disputed that, except for the inclusion of the 1926 trust fund as a part of the property to be taxed, a lesser total tax would have been imposed by the Federal government. Despite these concessions, however, the trustee of the fund argues that though the Federal taxing authorities could validly require inclusion of the fund the executor may not validly ask that the fund contribute its proportion of the tax levied by reason of that inclusion. The argument seems to be based on the theory that fixed property rights both of the trustee and of the beneficiaries of the trust fund would be unconstitutionally affected adversely by the exaction of a contribution.

Procedural methods for determining the source of payment of estate taxes have been in the Internal Revenue Act since 1916. Substantially the same provision which now is section 314 of the Revenue Act of 1926 (U. S. Code, tit. 26, § 426) is to be found in the prior Internal Revenue Acts beginning with that of 1916. The statutory rule there declared was always subject to contrary direction by the will or instrument regulating the fund taxed. The Federal rule was a rule *against* proration unless the will or instrument otherwise directed. The current New York statute (Dec. Est. Law, § 124) is a rule *requiring* proration unless the will or instrument otherwise directs. The idea of proration is not novel. It has always been a matter of procedure rather than of substantive law. The need for proration arose only when estate taxes as such were authorized. So long as the tax was on the transfer it was payable as of course by the recipient. When the tax became one upon the estate it was pertinent to inquire who would bear the burden of it. The regulation of that burden is one which the States may undertake (*Edwards* v. *Slocum*, 287 Fed. 651; affd., 264 U. S. 61), but in the absence of State regulation the Federal rule of presumption would necessarily apply in respect of the Federal estate tax.

So far as New York State is concerned, at least, the estate tax under the United States revenue laws went wholly to the Federal government between 1916 and 1925. In the latter year the State supplemented its existing *transfer* tax law by its first *estate* tax law. By article 10-B of the Tax Law it secured for itself the right to receive eighty per cent of the estate tax imposed by Federal law

which otherwise would have gone wholly to the Federal government Section 249-g of article 10-B made the Federal rule *against* apportionment (in the absence of contrary direction in the will or instrument) the New York rule as to *estate* taxes. While section 124 of the Decedent Estate Law was not operative on the date when this *inter vivos* trust of 1926 was created, the idea of statutory regulation of proration was already in the law by reason of article 10-B of the Tax Law. It was then accepted law that the burden of estate taxes was subject to State regulation. (*Edwards* v. *Slocum, supra,* decided 1923.) The acquiescence temporarily in the Federal rule did not disable this State to enact contrary legislation nor did its acquiescence in the Federal rule up to 1930 confer a *property* right on the beneficiaries of the 1926 trust.

The tax here imposed is imposed by reason of a tax law in effect at the date of death of deceased on February 26, 1934. The *inter vivos* trust fund was included in the taxable estate because the creator of the fund had reserved to himself the right to change the beneficiary and to alter the participations in the fund. His act in creating the fund was performed at a time when the existence of death duties was a currently accepted fact. Deceased must be held to have contemplated the exaction of such duties when he died under the law existent when he died. (*Matter of Duryea,* 277 N. Y. 310, 320.) Whatever rights accrued to the beneficiaries of the *inter vivos* trust must be deemed as well to be limited by the tax laws in existence at the death of deceased. As of that date the State of New York had given direction for the proration of taxes unless contrary direction was to be found. Though that New York statutory rule operates disadvantageously to the beneficiaries of the *inter vivos* trust it operates in a field wherein the State always had the power to make regulations (*Edwards* v. *Slocum, supra*) and so the disadvantage is not one which constitutes denial of due process.

The assertion of unconstitutionality of section 124 of the Decedent Estate Law, based on alleged impairment of the contract rights of the beneficiaries of the 1926 *inter vivos* trust, is equally without substance. Whatever contract rights they had under the trust indenture were rights subject to the sovereign's right of tax. Though that right was not written into the contract in words it was there in legal effect. Hence it may not be said that the contract has been impaired since in truth it has not been altered at all. If the impairment is claimed to be involved in the idea that the indenture gave the beneficiaries a contract right to have the tax paid out of some other fund than the trust fund it would seem to be sufficient to suggest that the fund would have been taxable

had deceased left no property at all otherwise. In that case, of course, the sovereign could and would exact a tax, and since the trust fund would in such circumstances be the sole source of payment it would have to pay. This much is conceded by the trustee. It does not seem to the court that the constitutionality of a statute can depend upon the casual circumstance of the existence or non-existence of other assets. The same claim of unconstitutionality for similar reason was decided adversely to the contentions of the trustee. (*Matter of Scott,* 158 Misc. 481; affd., 249 App. Div. 542; affd., 274 N. Y. 538; certiorari denied *sub nom. Northwestern Mutual Life Ins. Co.* v. *Central Hanover Bank & Trust Co.,* 302 U. S. 721.)

The respective claims of unconstitutionality having been disposed of, there is presented the question whether the trust fund must pay any part of the penalty imposed for delay in payment of the Federal estate tax. There is no controversy in respect of the proportion of the capital of the tax to which the trust fund must contribute on the assumption that the trustee's opposition on unconstitutional grounds is overruled. There is controversy over the question whether it should contribute at all to the penalty; and, if so, to what degree.

The burden of a penalty incurred by reason of non-payment of a tax is to be allocated by the court so far as possible so as to charge it to the persons whose acts or defaults caused the penalty. Where the acts which give rise to the penalty are plainly traceable to some particular cause the responsibility for the penalty should be allocated wholly to the person who produced that cause. There is express authority for this procedure. In *Matter of Oakes* (127 Misc. 779) the surrogate found as a fact that an executor who was also a donee of property of deceased failed to include the amount of the donated property in the estate tax return. Ultimately an audit by the tax authorities compelled the inclusion of the donated property. Because of the intervening delay there was added to the tax when assessed a penalty interest charge of $1,692.86. The executor in the particular case also delayed in making payment of the general estate tax, and because of such delay incurred interest charges thereon amounting to $330.74. The surrogate held the executor liable for the penalty interest due to the non-inclusion in the original report of the amount of the donated property. He also held him liable for the interest incurred because of delay in payments of taxes when assessed. The decree was affirmed in all respects (220 App. Div. 758). On further appeal to the Court of Appeals the major question whether the principal amount of the

tax due by reason of inclusion of the donated property was payable by the donee or by the estate was decided in favor of the donee. (*Matter of Oakes*, 248 N. Y. 280.) That was the only question considered by the Court of Appeals. That court left undisturbed the charge to the executor personally of the penalty interest. The decree entered pursuant to the remittitur charged to the executor the items of penalty interest and of interest collected on delayed tax payments just as had been done in the original decree. On the authority of *Matter of Oakes*, therefore, the parties here might have asked for the allocation of the whole penalty interest to the person or persons responsible for the non-inclusion of the trust fund.

The record before the court is barren of any objection by any interested party (including the trustee of the *inter vivos* fund) to the incurring of the penalty. No claim is made that the executors were at fault and should personally be surcharged with the penalty interest. It is apparent on the record before the court that as to two of the executors their personal interests would have been served had the trust fund not been taxed. As to the corporate executor, however, there is nothing in the record to show that it had any knowledge of the existence of the *inter vivos* trust fund. On the facts in the record it had no interest to avoid inclusion of the trust fund in the estate tax return. There exists in the record, therefore, no basis for surcharge against the corporate executor. The failure of the trustee of the *inter vivos* trust to seek surcharge of the individual executors seems to be a concession on its part that they were not subject to surcharge.

Having reached this point it is pertinent to inquire whether the surcharge was incurred by the fault of the trustee of the *inter vivos* trust. It is clear on this record that the trustee was aware of the death of the donor. It is clear, too, that though it now complains that the executors should have included the trust fund in the estate tax returns it attempts no showing that it asked the executors to include the fund in the estate tax return. While it now concedes that the government could validly exact from deceased's estate generally a tax measured in part by the inclusion of the trust fund in the gross of deceased's so-called "tax estate," it still adheres to its position that on constitutional grounds the fund may not validly be called on to contribute either principal or penalty in any amount. While the trustee could not have controlled the action of the executors in the sense that it could not have compelled the inclusion by them of the trust fund in the estate tax return it was not without power to seek determination of the question of tax-

ability. It could readily have furnished basis for its exemption from penalty at least by making demand on the executors for inclusion of the fund in the estate tax return.

It could, if it had chosen so to do, have made direct report to the government of the existence of the fund. While the term executor as defined in the United States Revenue Act is applicable primarily to the acting estate fiduciary it is also in some circumstances descriptive of the persons who are possessed of property required to be included in the gross estate. (Revenue Act, § 300; U. S. Code, tit. 26, § 530.) If an executor is unable to obtain from a person possessed of taxable property the data necessary for the making of a report the collector is empowered to call upon that person to make a wholly separate return. (U. S. Revenue Act, § 304; U. S. Code, tit. 26, § 421.) While the letter of the Revenue Act did not require the trustee of this *inter vivos* fund to make a return in its own behalf there was nothing in the way of its furnishing information either to the executors or to the collector, which would have resulted in the inclusion of the fund. It is quite apparent on this record that it preferred to do neither and was quite content to have the fund omitted from the estate tax return. If, in fact, the fund went untaxed by reason of that procedure the constitutional question which it now raises would not need to be raised. If, despite its quiescence, the trustee was called upon to pay the tax it then had its constitutional contentions upon which it could fall back. If the fund were untaxed by reason of government ignorance of its existence the trustee would have a larger fund on which income would accrue which was the source of income commissions.

It is against this factual background that the court has to determine what should be done equitably in the allocation of the penalty interest. The account shows that total penalties of $4,555.41 were paid in connection with the Federal estate taxes. There is included in the account Schedule J, which sets out the plan of allocation of the penalty urged by the executors. In that plan the executors refer to " average rate of interest on deficiencies," followed by the figure 9.748961 per cent. This figure appears to be a figure which would result in the total penalty interest of $4,555.41, if the total of the deficiencies, $46,727.13, is multiplied by it. Dealing with this percentage figure the executors distribute the total penalty interest between the trust fund and the estate by applying the figure to the sums which are respectively allocated as the principal charges payable by the estate and by the trust fund out of the total deficiencies of $46,727.13. In effect the executors contend that the deficiencies to the extent of $13,629.38 in

principal amount are attributable to the late inclusion of the trust fund; and that the trust fund should bear that proportion of the interest penalties which $13,629.38 bears to the total principal deficiency of $46,727.13. If the total deficiency interest, $4,555.41, is multiplied by a fraction of which the numerator is 1362938 and the denominator 4672713 the result is $1,328.72, the amount claimed by the executors through a different procedure.

The trustee of the *inter vivos* trust asserts that if its liability for deficiency interest is to be enforced at all there must be applied to the total deficiency interest, $4,555.41, a fraction of which the numerator is 11843078 (the trust fund capital) and the denominator is 241430559 (the gross estate, including the trust fund capital). This computation arrives at the figure $223.46, a sum which is $1,105.26 less than the amount claimed by the executors.

The accountings on file in respect of this estate show that on the basis of the return made by the executors originally the estate tax was paid in installments beginning on the last date when the tax could have been paid without penalty interest. The major portion of the tax was paid on that date. Some comparatively minor payments at later dates involved interest penalties of $792.56 only. The deficiency due to the late inclusion in the taxable estate of the principal of the *inter vivos* trust fund resulted in penalty interest totaling $3,762.85. This sum, together with the item of $792.56 assessed for late payment of tax on account of the originally reported estate, makes the total figure of $4,555.41 discussed above. It is apparent that if blame attached to the executors for failing to report the corpus of the *inter vivos* trust in the original estate tax return they would be surchargeable with the whole penalty for that failure, to wit, $3,762.85. (*Matter of Oakes, supra.*) It is apparent that the deficiency in tax established by reason of the eventual inclusion of the trust fund corpus in the total tax estate exceeds the ratable proportion of the total principal of the tax chargeable to the trust fund because the increase in the total taxable property increased the tax on the property already reported. It is for that reason in part that the total deficiency tax of $17,394.15 resulting from the inclusion of the trust fund principal may not be allocated to the trust fund.

Since we know that the deficiency interest penalty due to the late inclusion of the trust fund principal is $3,762.85 and since we know that the total principal tax increase of $17,394.15 is to the extent of $13,629.38 attributable to and payable by the trust fund as a principal charge it is at least arguable that the penalty interest item of $3,762.85 which is directly traceable to the late report of the trust fund principal should be allocated to the trust fund in

the amount fixed by applying to $3,762.85 a fraction of which the numerator is 1362938 and the denominator 1739415. This computation produces the figure $2,948.42. The remainder of the $3,762.85, $814.43, is a penalty which the general estate pays not because of any default in respect of the report of general estate assets, but because of the increased tax on general estate assets due to the higher brackets reached by the gross tax estate when the trust fund capital was included. The penalty follows and is consequent upon the added tax. Even this charge might have been allocated to the trust fund if affirmative showing had been made that the trustee fraudulently concealed the existence of the trust fund and (for example) denied its existence when asked about it.

It should be noted that the computations just made exclude all consideration of the penalty interest amounting to $792.56, reported in Schedule J of the account. This penalty interest is shown by the prior account in this estate to have accrued because of transactions unrelated to the principal of the *inter vivos* trust. There is no basis on which the trust fund should be asked to contribute to that interest. If the item of $792.56 be excluded then computations based upon a total deficiency interest charge of $4,555.41 must be disregarded as this last stated figure includes the $792.56.

The propriety of considering apportionment only in respect of that penalty which accrued by reason of the non-report of the trust fund capital as part of the gross tax estate seems to the court to be unassailable. The propriety of charging to the trust fund that proportion of the whole of such penalty interest which the trust fund capital tax bears to the whole tax on which penalties accrued seems proper unless there is to be found in this record something which excuses the trust fund from that burden. While the failure of the trustee to file objections to the account could be regarded in one aspect as an admission by the trustee that the penalty was chargeable wholly to the trust fund, it need not be given that full effect. But since the trustee still argues that the trust fund was not taxable at all nor compellable to contribute anything either to principal or to penalty interest it would be a denial of the realities of the situation to deny that the incurring of this penalty was due primarily and principally to the conduct of the trustee. It has been noted already that the corporate executor had no knowledge of the existence of the trust fund and no motive to withhold its report as part of the gross tax estate. It has been noted, too, that the trustee of the *inter vivos* fund was fully aware of deceased's death and has always adhered to a position that the fund was not taxable. While it cannot be said that there was any affirmative statutory duty resting on the trustee to report the fund to the

corporate executor or to the government it is clear that the penalty could have been avoided by the making of a report of the fund by the trustee. If timely report were made to the corporate executor the trustee could hold the latter to strict account if by fault of that executor the penalty was incurred. If timely report were made to the government the question of taxability could have been litigated by the trustee directly with the government. In essence the contention of the trustee now is that the fund under its control could await discovery by the corporate executor and the government, with the penalty for late report chargeable only in trivial degree to the fund after the fund was discovered and a tax imposed. The trustee, in effect, asserts that it could compel a loan by the true estate of the tax due from the trust fund and could later repay the loan without interest or with only nominal interest. The unsoundness of that position is evident if it were to be assumed that the general estate had in it assets sufficing only for the payment of administration expenses and the debts of deceased and that the whole of the tax eventually imposed was due to the existence of the trust fund only. In such circumstances no dialectic could obscure the fact that both the tax and the penalty related exclusively to the trust fund and that both tax *and penalty* must be paid by it. In a situation such as is here presented, where the trustee of the *inter vivos* trust is at least equally responsible for the penalty as is the corporate executor, the apportionment based on the formula outlined by the court is equitable. It should not be overlooked that the real question is whether the beneficiaries of the trust fund shall pay this penalty or whether the beneficiaries of the estate shall pay the penalty. The beneficiaries of the estate certainly have the right to say that they are wholly without fault in the transaction and that when they contribute to the penalty on the basis outlined above they have done all that can be asked of them. They can say with justice that this penalty did not accrue because of and that it has no relation to the vast bulk of the estate; because they can say that the tax upon the vast bulk of the estate was paid in full without interest and without penalty before the issue arose as to the trust fund liability for tax. It should not be overlooked, either, that the trustee's position has consistently been that of a person denying *in toto* any liability whatever for either tax or penalty interest. It was at no time willing to report the fund as taxable or to pay any part of any estate tax due to the inclusion of the fund in the gross tax estate.

The brief of the trustee suggests that no tax, or at least no penalty, should be imposed on the trust fund because the deficiency tax here imposed was due to a " compromise." This " compromise "

theory is based on the undoubted fact that there was included in the return made by the executors information concerning a trust set up by deceased in 1921 and concerning two trusts set up by deceased in 1931. The 1921 and the 1931 trust funds were reported by the executors as non-taxable. The figures upon which the deficiency tax is computed are concededly figures which exclude wholly the 1921 and the 1931 trust funds and include only the 1926 trust fund and the property otherwise reported by the executors as taxable. In such circumstances there is no basis for calling the result arrived at in the tax proceedings a " compromise." What is apparent from the record is that the fact of taxability of the 1926 trust fund (not now challenged even by the trustee) was conceded by the executors and the *non-taxability* of the 1921 and 1931 trust funds was conceded by the government. Therefore, the issue remains one strictly between the executors and the trustee of the 1926 trust. No " benefits " are shown to have been " received " by any " persons interested in the estate " except the trustee of the *inter vivos* trust and those interested in the general estate who are represented by the executors. It is only in respect of benefits received by such persons that the statute directing apportionment applies.

Notice must be taken of contentions made by the trustee of the *inter vivos* trust and by the executors as well in respect of interest earned during administration both on the amount paid out of the trust estate on account of taxes and on the amount which the trustee still retains but which under this decision must be paid by it on account of the capital of the tax. The trustee makes the surprising argument that the very large sums paid out for estate taxes by the executors earned interest from the date of death to the date when the sums were used to pay taxes, and that such interest must be taken into account by this court in determining how much should be charged either of principal or of interest by way of contribution of the trust fund to the total tax. With more appreciation of the realities the executors call attention to the fact that the fund which the trustee should contribute to the tax has been earning interest since the date of death and up to now. They claim that such interest is in any event recoverable from the trustee. These contentions present a question which recurs more and more frequently in the accountings which pass through this court. During the period of the exaction of transfer taxes no such question could arise. So long as the estate tax was small and its burden not seriously felt the question either did not arise at all or, if it arose, was disposed of by agreement among the parties in interest. Recently the increased burden of estate taxes has compelled the attention of

fiduciaries, of beneficiaries and of their respective counsel to the importance of the problem of apportionment. For that reason the court deems it proper to discuss somewhat the factors entering into the question. There is presented on this record no question of allocating the tax burden between principal and income account either in the estate or in the trust though it is quite apparent that this further problem is bound to arise in other controversies.

The fundamental which must first be ascertained is the nature of the right if any of individual estate or trust beneficiaries in the moneys used to pay the capital of an estate tax. Exact definition is not easy to find because the cases which deal with tax questions are cases which arose in respect of other issues. The books report a multitude of cases dealing with the nature of death or inheritance taxes. (See cases collected in the note to 103 A. L. R. 81.) Chiefly these cases considered the constitutionality of death duties. The differences in terminology used by the courts in speaking of death taxes are noted. (33 L. R. A. [New Series] p. 606.) The government's right to collect the tax is said to be secured by a lien on the property and is enforcible out of the whole body of the property. The right of the fiduciary to administer the property is conceded ( *United States* v. *Woodward*, 256 U. S. 632, 635), but no diminution of government claim is thereby involved. The right of the State of domicile of a deceased to regulate the devolution of his property is assumed (*Plummer* v. *Coler*, 178 U. S. 115), and the right of the State to exact a tax on the privilege of transferring property from the dying to the living is conceded, though the tax in fact might be collectible only out of Federal government securities. The nature of this tax right vested in the State is exhibited clearly in a case where the testator gave his whole estate to the government of the United States. If the property as a whole passed to the Federal government the State had no right to tax it. If only the balance left after deduction of the tax passed to the Federal government there was no unconstitutional attempt of the State to tax Federal property. The right of the State to tax the gift was vindicated. The reason given for the validity of the State tax is stated thus: " We think that it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is imposed upon the legacy *before* it reaches the hands of the government. *The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax*, and it is only upon this condition that the Legislature assents to a bequest of it." (Italics supplied.) ( *United States* v. *Perkins*, 163 U. S. 625, 630.) The same idea is expressed in other language by the Court of Appeals of this State when it

said (*Matter of Penfold*, 216 N. Y. 163, 167), in respect of the then operative transfer tax: " The tax (so called) is the *toll* or impost appropriated to itself by the State for or in connection with the right of succession to property. It accrues, therefore, at the same time that the estate vests, that is upon the death of the decedent. The nature of the tax and the time of its accrual has been repeatedly stated by this court. In *Matter of Swift* (137 N. Y. 77, 83) the court says: ' The question is whether the Legislature of the State, in creating this system of taxation of inheritances, or testamentary gifts, has not fixed as the standard of right the property passing by will, or by the intestate laws. What has the State done, in effect, by the enactment of this tax law? *It reaches out and appropriates for its use a portion of the property at the moment of its owner's decease; allowing only the balance to pass* in the way directed by testator, or permitted by its intestate law.' " (Italics supplied.)

The logical consequences which flow from the toll theory thus stated by the highest courts of the State and the Nation are obvious. If the tax is a toll excised from the body of property — not in fact but in legal theory — and secured not by immediate payment but by a lien on the whole of the property passing, and if the beneficiaries of an estate have of right only what is left or — as was said in *Matter of Penfold* (*supra*) — " only the balance," then it becomes apparent that at least to the extent that demand for interest is made by the sovereign the interest actually earned upon the government's toll may be paid by the fiduciary to the government and that in consequence no wrong is done to any beneficiary nor any right withheld from him. On the toll theory the sovereign grants a privilege to the fiduciary to administer the whole property and to receive the income thereon, pending payment of the tax. The sovereign (as in the case of New York State when an estate tax is paid within six months) may waive even a part of the principal of the tax. It may waive (as under the tax laws of both the sovereign State and the sovereign Nation) the increment received during administration upon this toll which is the property of the respective sovereign; but may waive that increment only if payment is made within the time fixed by the sovereign. Under the Federal Tax Law of 1934 the waiver was effective for a one-year period after death. In the case of the New York law the waiver of increment is effective for eighteen months provided payment is made within that period. If payment is not so made the waiver is rescinded and interest at the rate of six per cent per annum on the tax is payable from the date of death. Lacking proper excuse, the interest rate is ten per cent per annum.

If the toll theory so definitely and so deliberately asserted in the *Penfold* case (*supra*) is valid, then this trustee has had in its hands since February 26, 1934, the sum of $13,629.38 which on that date belonged to the sovereign. The trustee asserts in its memorandum that the average earning rate on both estate and trust fund assets should be computed at three per cent per annum. Since the trust fund has not contributed even yet it is quite apparent that for substantially five years the trustee has been handling government money. At the three per cent rate there accrued during this five years interest in excess of $2,000 upon this government toll of $13,629.38.

On the toll theory we have two defensible theses. The first is that the principal of the *inter vivos* trust is subject to excision of the government's toll of $13,629.38. The second is that there came into the *inter vivos* trust fund, as increment earned on government money, something over $2,000 since the death of deceased. To the extent that the sovereign demands his toll this trust fund and the actual earnings on the toll can offer no logical basis for refusing application of the fund and its increment to the satisfaction of the sovereign's claims. Again, on the toll theory those who are interested primarily in the true estate of deceased can claim the advantage of the partial interest waiver by the sovereign in respect of the toll payable out of true estate assets and can claim all undemanded increment on true estate assets during administration. This is so because they can say that the sovereign's demand for interest arises only in trifling degree in respect of the true estate and chiefly in respect of the trust fund.

Another argument of the trustee requires notice. It is to the effect that exact justice in apportionment would involve a problem in accounting which would be too burdensome and which should be avoided for that reason. The court sees no insuperable difficulty in following the direction of the statute in making apportionments. That direction is that the amount of the tax " shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrued. Such proration shall be made by the surrogate in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons." This mandate of the statute is absolute except in two respects. The first exception requires the court to take into account exemptions granted under the Tax Law. The second forbids the court to impose any contribution to the *capital* of the tax burden on any temporary estate arising under a trust. The court is bound to act under established

principles of equity. (1 Pomeroy's Equity Jurisprudence [4th ed.], § 59, p. 64.) One of these is that in equity interest is to be charged in the degree and at a rate equitable in the circumstances of the particular case. (*Woerz* v. *Schumacher*, 161 N. Y. 530, 536; *Blun* v. *Mayer*, 189 id. 153, 158; 2 Clark, New York Law of Damages, § 904.) The court has presented to it under this apportionment statute no different problem than arises in many other controversies in equity. The apprehended difficulty is not such as to warrant departure from standard practice. It would be a denial of equity and a violation of the direct mandate of the statute if any rule of thumb were sought for or any principle of apportionment established that did not recognize the equitable rights of the individuals affected by the tax. Equality of contribution to the burden of the tax is the declared purpose of the statute. That purpose is declared, too, in the legislative note which accompanied its enactment. The statute and the note were prepared by the Commission to Investigate Defects in the Law of Estates. The statute has a purpose which the Commission deemed essential to accomplish in connection with the general scheme of readjusting inequalities found to exist in estate administrations under theretofore existing law. The courts in the light of that history of the statute should enforce apportionment in all cases unless definite direction to the contrary is found within the four corners of the will as interpreted in the light of the background against which it was drawn.

The considerations recited in this decision require that the court overrule all objections interposed by the trustee of the *inter vivos* trust to the account of the executors. Pursuant to the authority granted by section 124 of the Decedent Estate Law the court fixes as the sums payable by the *inter vivos* trustee out of the trust fund in its charge $13,629.38 as a contribution to the capital of the estate tax and $2,948.42 as a contribution to the penalties due to the late assessment of tax on the *inter vivos* fund.

Submit, on notice, decree settling the account accordingly.