In the Matter of the Estate of AMELIA H. HARJES, Deceased.

Surrogate's Court, New York County, February 16, 1939.

*Coudert Brothers,* for the executor.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Edwin E. Peterson* and *A. H. Miller* of counsel], for Henry Herman Harjes, objectant, and for the executors, etc., Louise Harjes Moore, deceased, and for the Guaranty Trust Company of New York, as trustee under trust indenture dated July 5, 1927, made by Amelia H. Harjes, deceased.

*Thomas F. Kane,* special guardian of infants.

DELEHANTY, S. The accounting in this estate presents one of the many problems arising in the allocation of the burden of estate taxes. Here the issue arises on the objection of an income beneficiary of a testamentary trust to a charge made to income account of the penalty imposed for late payment of the estate tax. The charge objected to operates to diminish the estate income payable to a trustee but objectant is a necessary party (Surr. Ct. Act, § 262, subd. 10) since the accounting executor is also the trustee; and objectant is, therefore, authorized to interpose the objection.

It is expressly conceded that the delays in the probate of the will and in the issuance of letters testamentary arose from no fault of any interested party. The accounting executor is a successor fiduciary. It acted promptly upon its appointment and paid the estate taxes with reasonable speed. Objectant concedes that no basis exists for surcharge because tax penalties were incurred. The question is, from what fund is the penalty to be paid?

For the solution of this problem no precise rule is to be found in section 124 of the Decedent Estate Law. That section does contain a broad direction to the court to deal equitably with the parties interested. It commands apportionment according to benefit received unless contrary command is found in the will. Concededly there is here no such contrary direction.

According to the command of the statute the court must first ascertain the factors which govern an equitable apportionment of the tax burden. The first and fundamental inquiry is into the nature of the tax. This was discussed at some length by the court

in *Matter of Ryle* (170 Misc. 450) and will be dealt with here more briefly. In a case dealing with a will which gave the whole of the testator's estate to the government of the United States the nature of the tax proposed to be collected by the State of New York was necessarily involved. It was quite apparent that if the estate as a whole vested at the date of death in the government of the United States there was no right on the part of the State of New York to tax the property at all. If, however, the property which passed to the Federal government was only the balance left after deduction of the State tax there was no doubt of the right of the State to impose a tax upon the privilege of transfer. In the Supreme Court of the United States the right of the State to tax the gift was vindicated. The Supreme Court said: " We think that it follows from this that the act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is imposed upon the legacy *before* it reaches the hands of the government. *The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax,* and it is only upon this condition that the Legislature assents to a bequest of it." (Italics supplied.) ( *United States* v. *Perkins,* 163 U. S. 625, at p. 630.) The same idea is expressed in other language by the Court of Appeals of this State when it said (*Matter of Penfold,* 216 N. Y. 163, at p. 167) in respect of the then operative transfer tax: " The tax (so called) is the *toll* or impost appropriated to itself by the State for or in connection with the right of succession to property. It accrues, therefore, at the same time that the estate vests, that is upon the death of the decedent. The nature of the tax and the time of its accrual has been repeatedly stated by this court. In *Matter of Swift* (137 N. Y. 77, 83) the court say: ' The question is whether the Legislature of the State, in creating this system of taxation of inheritances, or testamentary gifts, has not fixed as the standard of right the property passing by will, or by the intestate laws. What has the State done, in effect, by the enactment of this tax law? *It reaches out and appropriates for its use a portion of the property at the moment of its owner's decease; allowing only the balance to pass* in the way directed by testator, or permitted by its intestate law.' " (Italics supplied.)

It follows from this toll concept of the tax that there never passed into the ownership of any legatee any share in the fund excised — in legal theory — from the property formerly owned by deceased and appropriated at the instant of death by the sovereign as its toll or tax on the privilege to pass on the balance. In con-

sequence there never accrued *any legal right* in any beneficiary **to** the interest on the fund so excised. To the extent that such interest is needed to pay in full the interest demands of the sovereign the appropriation of the interest to such a purpose by a fiduciary *does no legal wrong to any beneficiary.* While in an ordinary administration the beneficiary may hope that the income earned on the whole body of the property in the management of the fiduciary will be distributed as if earned on assets unburdened by the tax, the *opportunity* to receive income on the toll exacted by and at all times remaining the property of the sovereign is due to the *grace of the sovereign.* When withdrawn, the loss of the opportunity *is merely a deprivation of a gratuity* — not a wrong. If the tax is paid on or before the due date the interest is waived finally by the sovereign. Indeed if the tax due New York State is paid within six months even a part of the toll itself is waived. If, however, the tax is not paid on time the inchoate waiver of the interest never becomes effective and the interest from date of death (the date when the toll was taken) is applicable to the payment of the penalty, at least to the extent required by the sovereign's demand for penalty.

This principle of apportionment operates whether the tax penalty involved is incurred on Federal or on State taxes. While the penalty interest, when exacted, is computed at rates which vary under different tax laws and under different types of default in payment and while the grace period for the tax payment varies also there is never a change in the basic fact that the interest at all times accrues *from date of death* on the principal sum exacted by the sovereign as its toll and that *this sum has never ceased to be owned by the sovereign.* It is in the custody *pro tem* of the estate fiduciary but the whole tax estate must respond when demand for payment is made. The toll never shrinks no matter what the shrinkage may be in the balance receivable by the beneficiaries. It is the fixed government share of deceased's goods. On its value as of date of death is to be credited interest at the rate earned by the estate assets as a whole and such interest used for paying penalties.

The parties have stipulated that from the date of death, July 9, 1934, down to the date when the last tax payment was made the tax principal of \$421,019.12 earned \$17,713.49 gross. Income charges properly chargeable to this sum amount to \$5,695.24, leaving a net of \$12,018.25. The penalty interest on the tax amounts to \$18,031.43. Pursuant to the views hereinabove expressed the court directs that the net earnings upon the capital of the tax, to wit, \$12,018.25 be first applied in satisfaction of the penalty interest *pro tanto.* This sum is a proper charge to income account. In

directing that charge to income account the court is taking nothing from any income beneficiary to which he was entitled as of right. To the extent that income account had been credited with earnings upon the sovereign's toll it is equitable that the whole of such earnings be applied to the satisfaction of the penalty interest. The balance of $6,013.18 must be paid out of the principal account. While the ultimate beneficiaries of capital are thus forced to bear an added burden there is at least some contribution by income account in the fact that the base upon which income is earned thereafter is reduced by the amount charged to capital account. It is logical to impose upon capital account the burden of the unabsorbed penalty interest because the tax itself is a capital charge. It is illogical to impose the burden on income account beyond an amount equal to the actual net earnings on the sovereign's toll.

As is stated in *Matter of Kaufman* (170 Misc. 436), released simultaneously herewith, the duty to make allocation of taxes is comprehensive and integral. Whether one party in interest or another raises an issue as to a proper allocation the court when reaching its decision must make it applicable to the whole burden of the tax and must make direction as to the interests of those who have not interposed in the discussion as well as to the interests of those who have championed one view or another of the problem. As among the parties interested in this estate the tax burden is hereby allocated in the proportion which their respective interests bear to the whole estate. Since most of the estate is now distributable to persons who are equally interested in principal and in income it is unimportant in their cases to make any special notation of the amounts chargeable to income and to principal account respectively. In respect of the portions of the estate which are held in trust their ratable shares of the $6,013.18 balance are to be charged to the principals of the respective trusts. Each income beneficiary of a trust who has been charged with any portion of this $6,013.18 is entitled to have his income account reimbursed out of the principal of his respective trust since the payment of the penalty interest was made out of income to his detriment so far as the payment exceeded the amount credited to income account from the net interest on the tax toll. The amount of such reimbursement is to be computed on the basis of the share of the respective beneficiary in the income account of his trust.

Submit, on notice or consent, decree settling the account and allocating according to this decision the burden of the estate taxes.