In the Matter of the Accounting of T. ROBERTS APPEL et al., as Executors of JOHN W. APPEL, JR., Deceased.

Surrogate's Court, Westchester County, February 11, 1947.

*Burchard Dutcher* for petitioners.

*White & Case* for Bankers Trust Company, trustee.

*Morris Golub,* special guardian.

GRIFFITHS, S. In this executors' accounting proceeding petitioners seek advice and instruction with respect to proration of estate taxes paid by the executors.

The decedent died August 27, 1942, leaving a general or testamentary estate in the amount of approximately $81,000. Prior to his death and on or about May 31, 1928, the decedent executed an *inter vivos* revocable insurance trust agreement with respect to policies of life insurance covering his life, in the face amount of $194,000. Since the proceeds of such policies were necessarily included in the taxable estate, the total of estate taxes assessed to and payable by the executors was increased appreciably. It is the contention of the trustee, however, that by reason of the provisions of said agreement and its execution prior to the enactment of section 124 of the Decedent Estate Law (L. 1930, ch. 709, eff. Sept. 1, 1930), no contribution for such estate taxes may be lawfully required of it. Counsel for the trustee argues *inter alia* that the beneficiaries under the trust agreement have contractual rights which may not be impaired by legislation thereafter enacted.

The only direction in the will, which is dated August 5, 1936, in regard to payment of estate taxes, is that contained in paragraph " Seventh " thereof which reads as follows: " Seventh: I direct that all inheritance taxes, succession or estate taxes which may be assessed or imposed upon any of the legacies, devises or bequests contained herein, shall be paid out of the rest, residue and remainder of my estate."

That the directions in the will are not sufficiently broad to include nontestamentary transfers is clear. (*Matter of Ryan,* 178 Misc. 1007, affd. 265 App. Div. 1051; *Matter of Kalik,* 179

Misc. 872; *Farmers' Loan & Trust Co.* v. *Winthrop*, 207 App. Div. 356, mod. 238 N. Y. 477; *Matter of Rogers*, 249 App. Div. 238, motion for leave to appeal denied 273 N. Y. 680; *Matter of Corlies*, 174 Misc. 459; *Matter of Pennock*, 172 Misc. 10, revd. on other grounds 260 App. Div. 181, which was revd. 285 N. Y. 475; *Chase National Bank* v. *Tomagno*, 172 Misc. 63; *Matter of Kaufman*, 170 Misc. 436.) Such testamentary directions were clearly intended to be confined to taxes imposed with respect to the testamentary benefits.

The pertinent clause in the *inter vivos* trust agreement is paragraph " Eleventh ", which reads as follows: " Eleventh: The Trustee shall not pay any estate, inheritance or transfer tax, death duties, taxes on succession or any other similar tax, whether imposed by the United States, any state or lawful authority whatsoever, which may grow due or be assessed by reason of, or on account of, the property of which the Insured shall die seized or possessed, unless the property of which the Insured shall die seized or possessed shall be insufficient to pay such taxes, and in that event the Trustee shall be required to pay such taxes only to the extent that the assets of which the Insured shall die seized or possessed shall be insufficient to pay such taxes." Counsel urges that the above-quoted provisions of paragraph " Eleventh " indicate an intent of the testator to exempt the insurance moneys from contributing to the estate taxes, in the absence of a deficiency of testamentary assets for such purpose. A careful reading of the clause in question, however, shows that it is not free from ambiguity in this respect.

Assuming, however, the agreement were to be interpreted most favorably to the trustee's position, nevertheless the fund would be required to contribute its prorata share of the estate taxes in question. Prior to the enactment of section 124 of the Decedent Estate Law, the New York courts followed the Federal rule that Federal estate taxes were payable out of the general estate as an expense of administration, unless the will contained a direction to the contrary. (*Matter of Berger*, 183 Misc. 366.) The enactment of section 124 reversed the rule, requiring proration of both Federal and State estate taxes unless the will directs otherwise. Although section 124 was enacted subsequent to the execution of the insurance trust agreement in question, that the ultimate impact of estate taxes should be fixed by statute was theretofore an accepted fact in our law, as evidenced by the enactment of article 10-B of the

Tax·Law (L. 1925, ch. 320, eff. April 2, 1925; see § 249-g.)
Moreover, the inclusion in the trust agreement of the above-
quoted paragraph with respect to estate taxes imposed on
testamentary gifts, shows that the decedent at that. time was
cognizant of their possible impact upon his estate. And the
decedent must be held to have contemplated the exaction of
such taxes on the occasion of his death at the rates existent
at that time. (*Matter of Duryea,* 277 N. Y. 310, 320.)

The right of the sovereign to exact death duties for the privi-
lege of transferring property upon the occasion of death may
be said to be a condition and part of every contract. (*Matter
of Ryle,* 170 Misc. 450; *Long Island Water Supply Co.* v.
*Brooklyn,* 166 U. S. 685, 692.) Furthermore, the right of the
State or Federal Government to exact such duties from the
proceeds of insurance policies is well settled. (*Chase Nat.
Bank* v. *United States,* 278 U. S. 327.) The interests of the
beneficiaries under the insurance trust agreement were at all
times therefore necessarily subject to possible diminution by
reason thereof.

An argument as to the constitutionality of the statute was,
under somewhat similar circumstances, advanced and decided
adversely to the beneficiaries under an *inter vivos* trust in
*Matter of Ryle (supra).* In rejecting the contention that the
rights of the beneficiaries were unjustly impaired by reason of
the subsequent enactment of section 124, the court pointed out
that the trust fund would have to contribute to the estate taxes
if the assets in the testamentary estate were insufficient to pay
its prorata share in full, for the right of the sovereign to
exact a tax with respect to the fund could not be defeated. The
court there concluded that the constitutionality of the statute
may not depend upon the casual circumstance of the existence
or nonexistence of testatmentary assets. (See, also, *Matter of
Scott,* 158 Misc. 481, affd. 249 App. Div. 542, affd. 274 N. ·Y.
538, certiorari denied *sub nom. Nothwestern· Mutual Life Ins.
Co.* v. *Central Hanover Bank & Trust Co.,* 302 U. S. 721.)

Moreover, it is to be noted that this will was made in 1936,
six years after the effective date of section 124. Not only must
it be presumed that the draftsman was acquainted with its
provisions, but, the inclusion in the will of a direction against
apportionment, with respect to testamentary gifts, shows that
he was in fact cognizant of the same. Such knowledge of the
draftsman is, of course, imputable to the testator. (*Matter of
Riecke,* 165 Misc. 566, 568, and cases cited; see, also, minority

opinion in *Matter of del Drago,* 287 N. Y. 61, 80.) It is to be presumed therefore that on the occasion of making his will the testator considered the possible effect of estate taxes upon the proceeds of the insurance policies which were the subject matter of the trust agreement in question. Having it within his power at that time to direct that no apportionment of such taxes be made against the insurance fund and having limited the testamentary directive to testamentary gifts, it is fair to infer that the testator intended that the insurance fund should not be exempt from payment of its proportionate share of such taxes. The direction in the will is not only clear, but constitutes the last pronouncement by the testator as to his wishes with respect to the impact of such taxes.

Furthermore, even though the effect of the provisions of the trust agreement with respect to the impact of estate taxes were to be considered, nevertheless the result reached would be the same. First, the exoneration of the property constituting the subject matter of the trust agreement is limited, in the absence of a deficiency, to estate taxes imposed upon " property of which the Insured shall die seized or possessed ", which a reading of the entire context clearly shows was not intended to include the insurance moneys. Secondly, the authority of and direction to the trustee to pay such taxes is limited to the extent that the " assets of which the Insured shall die seized or possessed " are insufficient to pay the same. Although it is quite improbable that the amount realized from the liquidation of testamentary assets would ever prove to be insufficient to pay the estate taxes imposed thereon, it is nevertheless possible and, therefore, the court must give effect to the language employed.

The trustee under the *inter vivos* trust is accordingly directed to pay to the executors the prorata share of the estate taxes allocable to the insurance trust fund included in the taxable estate.

The request to abandon the securities listed in schedule " H " of the account is granted, and the counsel fee of the attorney for petitioners in the amount requested is allowed.

**Settle decree.**