Shientag, J.
The main question involved on this appeal concerns the interpretation and the application of a Florida tax apportionment statute, enacted on June 13, 1949, to an inter vivos, revocable trust created by the decedent.
Eduardo Hidalgo Gato, Jr., a resident of Florida, died intestate on March 8, 1948, leaving as his distributees his five surviving children. Letters of administration on his estate were issued in Florida on March 30, 1948. The administrator filed a Federal estate tax return for the decedent’s estate on June 6, 1949, showing a gross estate of $782,623. The gross estate so reported included amounts of $346,820 and $182,153, the corpus in each case of two revocable inter vivos trusts established by the decedent on July 23, 1923, and June 8, 1929, respectively. The first of these trusts, in the amount of $346,820, is involved in this proceeding. The second of the trusts is the subject matter of a companion proceeding, the questions of law presented in each proceeding being similar.
Under these two revocable inter vivos trusts, the income in each was payable to the decedent for his life and after his death to his five children for their lives, with remainders over to their issue.
*654 The balance of the gross taxable estate consisted of $36,257 of insurance payable to named beneficiaries, and other assets. After deductions, the net estate distributable by the administrator before estate taxes was shown at $180,571. The total Federal estate tax, as shown by the return, including the inter vivos trusts, amounted to $190,532, and the Florida estate tax amounted to $20,198. The administrator paid the Florida estate tax in full (presumably before June 13, 1949, although the record fails to disclose the exact date), and on June 6, 1949, the administrator made a* payment of $31,532 on account of Federal estate tax. The' estate in Florida is still in process of administration.
On June 13, 1949, as has been stated, the Florida tax apportionment statute became law (Laws of Florida of 1949, ch. 25435 [No. 439]). This statute provides for the equitable apportionment of both Federal and State estate taxes among the persons interested in the estate in a manner substantially identical with section 124 of the New York Decedent Estate Law. However, while the New York statute applied only to estates of persons who died after the statute became effective, the Florida act by its terms (§ 4) applies to estates of persons dying after January 1, 1948, or to payments of estate taxes or death taxes made, or required to be made, after June 13, 1949.
Guaranty Trust Company of New York is the trustee of the $346,820 trust fund which was included in the decedent’s gross estate in the Federal estate tax return. That trustee, in its petition to the court below, requested, among other things, instructions as to what action, if any, it should take with respect to Federal and State tax on the estate of the decedent and interest thereon, whether by way of payment of such taxes and interests or reimbursement to the administrator of the estate of the decedent. Similar instructions were requested in the companion proceeding by the National City Bank as original trustee and City Bank Farmers Trust Company as successor trustee of the trust fund amounting to $182,153.
The learned court below held: (1) that section 4 of the Florida apportionment statute is unconstitutional in its application to the trust fund held by the petitioner as trustee because of its retroactive operation; and (2) that the petitioner should make no payments in respect of Federal and Florida estate taxes, assessed by reason of the inclusion of such trust fund in the decedent’s gross estate or interest thereon, to or on the direction of the administrator, except to the extent that, and *655 not until, the assets of the estate located in Florida have proved insufficient to pay such taxes and interest thereon. With this holding we are not in accord.
It is undisputed that the New York Supreme Court has jurisdiction to grant the relief sought by the trustee in this proceeding. The trust fund is in New York and the proceeding is basically in rem and not in personam (cf. Matter of Buckman, 270 App. Div. 707, affd. 296 N. Y. 915). The Florida court could not exercise jurisdiction over the trustee in the absence of its consent, and therefore the New York Supreme Court is the appropriate forum. Nor is it disputed that the New York courts will apply the domiciliary law of the decedent in a proceeding wherein instructions are sought concerning apportionment of estate taxes. In the present proceeding the domiciliary law is the law of the State of Florida.
We hold, first, that the apportionment statute involved no retroactive change in Florida law, but was simply declaratory of existing law in that State; second, that in the absence of a showing that the Florida apportionment statute effected a change in the law its validity must be sustained; and, third, that even if the apportionment statute effected a change in the law it is valid and constitutional as applied to the situation here presented.
There can be no question of retroactivity if the tax apportionment statute is merely declaratory or in clarification of existing Florida law. In section 5 of the statute in controversy, the Florida Legislature specifically declared that it “ considers the equitable principles of this Act as merely declaratory of the existing public policy of this State * * *.” Such a definite legislative declaration as to existing local law should be given full effect in the courts of a foreign jurisdiction, especially where that legislative declaration is in no way inconsistent with local court decisions in Florida (cf. Henderson v. Usher, 125 Fla. 709; Murphy v. Murphy, 125 Fla. 855, both decided in 1936 and holding, in reliance upon general equitable considerations, that it would be unjust for a wife to take her dower interests free of tax and thus leave the remaining beneficiaries of the probate estate to bear the entire tax burden). Such equitable considerations make apportionment even more essential where the inclusion in the gross taxable estate of revocable inter vivos trusts for the benefit of the settlor for life can otherwise wholly distort ■ any reasonably presumed intent as to distribution of the probate estate. In other words, the principle of equitable apportionment of estate taxes adopted *656 by the Florida Supreme Court in the dower cases referred to would apply a fortiori to prevent the probate estate beneficiaries from being unjustly burdened with estate taxes attributable to nonprobate assets included in the taxable gross estate.
The pre-existing law and policy of Florida, as declared by its Legislature, which finds support in the indicated cases, is in line with the law and policy of other States (Hooker v. Drayton, 69 R. I. 290, 295, 296; Morristown Trust Co. v. Childs, 128 N. J. Eq. 524; Regents of Univ. System of Georgia v. Trust Co. of Georgia, 194 Gra. 255; Trimble v. Hatcher’s Executors, 295 Ky. 178, appeal dismissed and certiorari denied 321 U. S. 747; Matter of Ratcliff, 212 La. 563).
There have been decisions in New York holding that the residue of the probate estate must bear the entire Federal tax burden (Matter of Hamlin, 226 N. Y. 407, certiorari denied 250 U. S. 672; Farmers’ Loan & Trust Co. v. Winthrop, 238 N. Y. 488, certiorari denied 266 U. S. 633; Matter of Oakes, 248 N. Y. 280). Those decisions, however, were explicitly predicated upon the fact that what is now subdivision (b) of section 826 of the Internal Revenue Code (U. S. Code, tit. 26, § 826) required payment from the residue. Thus, in Matter of Oakes (supra) the court stated (p. 283): “ The command of the statute is explicit as to the incidence of the burden.” In consequence, therefore, section 124 of the Decedent Estate Law of this State was declared invalid as in direct conflict with what the Court of Appeals believed to be the mandate of Congress in subdivision (b) of section 826 of the Internal Revenue Code (Matter of del Drago, 287 N. Y. 61 [1941]). However, the Supreme Court of the United States reversed this decision and held specifically that subdivision (b) of section 826 did not determine who should bear the burden of the Federal estate tax but that the applicable State law governed the ultimate impact of the tax (Riggs v. del Drago, 317 U. S. 95 [1942]).
The result was not only to sustain section 124 of the Decedent Estate Law but also to nullify the prior New York decisions, such as the Hamlin, Winthrop and Oakes cases heretofore cited, which held that the residue must bear the impact of the Federal estate taxes because of the supposed Congressional direction.
As has been indicated, it is essential to find that, contrary to the legislative declaration, the apportionment statute of Florida effected a change in the law before any question of invalidity based on the retroactivity of the statute arises. The burden of showing that such a change was effected rests upon the party challenging the statute. “ It is a salutary principle *657 of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it ”. (Metropolitan Cas. Ins. Co. v. Brownell, 294 U. S. 580, 584; Matter of Fay, 291 N. Y. 198, 207.)
Here there has been no showing that the law of Florida prior to the apportionment statute, provided for the payment of the entire estate taxes from the residue of the probate estate. Matter of Ruperti (194 Misc. 376) involving a Florida decedent, is not authority that the law of Florida provided for no apportionment; that case merely assumed that such was the result in the absence of a statute similar to section 124 of our Decedent Estate Law.
Even if the apportionment statute of Florida effected a change in the law of that State, it is valid and constitutional. Its constitutionality, except for the claimed retroactive effect, is clear. There is no basis for any contention that the statute violates the obligation of a contract because it operates on an inter vivos trust created prior to its enactment (Matter of Ryle, 170 Misc. 450, 453-454; Matter of Scott, 158 Misc. 481, affd. 249 App. Div. 542, affd. 274 N. Y. 538, certiorari denied sub nom. Northwestern Mut. Life Ins. Co. v. Central Hanover Bank & Trust Co., 302 U. S. 721). The retroactive effect, which it is contended constitutes a deprivation of property without due process of law, is to be found in section 4. That section provides that the act which became law on June 13, 1949, shall apply to estates of persons dying after January 1, 1948, or to payments of estate taxes or death taxes made or required to be made after June 13, 1949. Insofar as the statute applies to payments of taxes made or required to be made after June 13, 1949, the effective date of the law, it is really in no sense retroactive. In any event, we hold that the section as a whole is not so retroactive, arbitrary or unreasonable that its application, under the circumstances here presented, is unconstitutional.
It is well settled that legislation is not unconstitutional merely because it may have some retroactive effect or because if operates upon events occurring after its enactment, even though the antecedents of such events preceded the legislation (United States v. Jacobs, 306 U. S. 363; Welch v. Henry, 305 U. S. 134; United States v. Hudson, 299 U. S. 498; Reinecke v. Smith, 289 U. S. 172; Cooper v. United States, 280 U. S. 409).
Thus, the Supreme Court of the United States, in holding valid a Wisconsin statute enacted on March 27, 1935, which imposed a tax on corporate dividends received in 1933, referred *658 to the long-established constitutionality of such statutes (Welch v. Henry, 305 U. S. 134, 148), saying: “ These statutes not only increased the tax burden by laying new taxes and increasing the rates of old ones or both, but they redistributed retroactively the tax burdens imposed by pre-existing laws.” (See, also, Reinecke v. Smith, 289 N. S. 172.)
Moreover, retroactive succession taxes, or retroactive increases or modifications thereof enacted after a decedent’s death have been held constitutional (Carpenter v. Commonwealth of Pennsylvania, 17 How. [U. S.] 456; Orr v. Gilman, 183 U. S. 278; Cahen v. Brewster, 203 U. S. 543; Blodgett v. Bridgeport City Trust Co., 115 Conn. 127; Magee v. Commissioner of Corporations & Taxation, 256 Mass. 512; Matter of Fotheringham, 183 Wash. 579).
In Orr v. Gilman (183 U. S. 278, 285, supra) the court said; ‘ ‘ If the State, during this period of administration and control by its tribunals and their appointees, thinks fit to impose a tax upon the property, there is no obstacle in the Constitution and laws of the United States to prevent it.”
So much for analogous cases. Although neither this court nor the Court of Appeals has passed upon the precise question here presented, the highest courts of Pennsylvania and Massachusetts have upheld tax apportionment statutes enacted subsequent to the decedent’s death as applied to inter vivos trust transfers (Matter of Jeffery, 333 Pa. 15; Merchants Nat. Bank of Boston v. Merchants Nat. Bank of Boston, 318 Mass. 563). Matter of Jeffery involved more than a passing or incidental dictum since the court as a separate ground for its decision squarely upheld the constitutionality of the apportionment statute as retroactively applied, a holding which was followed in Matter of Mellon (347 Pa. 520).
The Massachusetts case (Merchants Nat. Bank, supra) presents a most thorough and carefully reasoned consideration of the issue here involved. There the Massachusetts Supreme Judicial Court, in a case involving an irrevocable inter vivos trust, held constitutional the application of the Massachusetts apportionment statute passed in 1943 to the estate of a decedent who died three years earlier. Approximately one half of the Federal estate tax was paid prior to the enactment of the apportionment statute and the remainder was paid subsequent thereto. The Massachusetts statute however expressly provided that it did not apply to amounts paid as estate tax nor to distributions made by an administrator, executor or trustee before the effective date of the law.
*659 We go a step further and hold, in accordance with the reasoning of the Massachusetts decision, that so long, at any rate, as a decedent’s estate is in process of administration, the rights of the beneficiaries thereof, including beneficiaries of property constituting part of the gross taxable estate, although not in the probate estate, are not completely fixed and ascertained; that during such period the property constituting the gross taxable estate remains within the State’s taxing power and within the State’s power to control the ultimate impact of the tax burdens thereon. It is immaterial whether an estate taxable inter vivos transfer, or a disposition by will or under intestacy laws, is involved. For all tax purposes, property in an inter vivos trust, revocable up to the date of the decedent’s death, is treated as the settlor’s own property — no gift tax is payable upon the transfer, the income is taxed to the settlor, and the property is included in the settlor’s gross estate for estate taxes.
The case of Parlato v. McCarthy (136 Conn. 146) is cited for the proposition that the apportionment statute of that State was invalid for retroactivity, although implicit in the decision is that such a statute may operate validly as to tax payments made or to be made after the enactment thereof. In Connecticut, the apportionment statute which was enacted on July 18, 1945, simply provided that it was applicable to the estates of persons dying on and after July 18, 1944. We shall not attempt to distinguish that case from the instant one, for we do not adopt its reasoning. It may be pointed out also that, in a case just decided by the District Court of the United States for the District of Connecticut, the Parlato case was not followed (Horwitt v. Horwitt, 90 F. Supp. 528).
The purpose of an apportionment statute is to allocate fairly the estate tax burden and to correct unjust and inequitable situations whereby, in the absence of a specific direction by the decedent, the residue would otherwise bear the entire tax burden. Such a result would be particularly inequitable where, as in the present case, includible inter vivos transfers give rise to estate taxes in excess of the value of the probate estate otherwise distributable.
Apportionment statutes are designed to remedy judicial presumptions indulged in, incorrectly many have urged, concerning the intent of a decedent who has either died intestate or, if testate, without any direction in his will as to the tax burden (Statutory Apportionment of Federal Estate Taxes, 62 Harv. L. Rev. 1022 [1949]). The purpose of apportionment statutes is to remedy inequity and to promote justice. They are based *660 on the realistic and logical assumption that the only unexpressed intent that can reasonably be attributed to a decedent is the intent that those who benefit from property which results in estate taxes should proportionately beár the burden of such taxes. To require such proportional sharing of the burden of estate taxes with respect to an estate in process of administration is to prevent the unjust enrichment of one beneficiary at the expense of another — to preclude one from bearing the tax burden on property received by another. To produce such equitable result is not so arbitrary or unreasonable as to violate constitutional prohibitions.
Nichols v. Coolidge (274 U. S. 531) and Coolidge v. Long (282 U. S. 582) are not here applicable. As the Massachusetts court pointed out (Merchants Nat. Bank of Boston v. Merchants Nat. Bank of Boston, 318 Mass. 563, supra), in both of these cases the settlor had divested himself of all interest in the trust property prior to his death and there was nothing to which either an inheritance tax or a succession tax could apply. Here the trust property and the insurance money were properly included in the gross estate for tax purposes and the payment of the tax by the executors set in operation the apportionment statute as an incident to the tax on the inter vivos transfer. In the Goolidge cases (supra) each settlor had completely given away certain property long before his death and at his death had no interest thereon whatsoever; his death therefore effected no transfer from him. An unforeseeable estate or succession tax enacted subsequent to the transfer was held invalid insofar as it attempted to tax as passing by death the property which he had long since completely disposed of. On the other hand, in the present case, the decedent had the power to revoke the inter vivos trust and it was admittedly includible in his taxable gross estate. The very tax sought to be apportioned in the present case is attributable in part to the inclusion of the trust fund. . There is not a semblance here of arbitrary and unreasonable action such as was found to exist in the Goolidge cases (supra); on the contrary, the objective was undeniably reasonable and fair. Inclusion of the trust fund in the gross taxable estate is a factor which completely distinguishes the present case from those cited by respondents (see, also, Milliken v. United States, 283 U. S. 15).
We hold, therefore, on this phase of the case before us, first, that the Florida statute here involved was declaratory of the law of that State as it existed at the time of the death of the decedent; in any event, the respondents have failed to show, *661 and that burden was upon them, that the apportionment statute changed the existing law of Florida. Second, that, assuming arguendo that the apportionment statute changed that law, it was nevertheless valid and constitutional, certainly while the estate is still in process of administration (a) as to payments of Federal and State estate taxes made or required to be made after June 13, 1949; (b) as to Federal and State estate taxes paid before June 13, 1949, where the decedent died after January 1, 1948.
There was a further subsidiary question, which the court below did not pass upon — instructions to the petitioner trustee in regard to charging to income or principal such interest on the taxes as is payable from the trust fund. This question arises irrespective of whether or not the apportionment statute is held valid, because interest due and to become due on the estate taxes will of necessity be borne in some part by the inter vivos trust fund here involved, since in no event would the probate estate be able to pay the estate tax and interest thereon. We hold that any interest on the estate taxes payable from the trust fund should be paid from income to the extent that income was earned on that part of the trust fund used to pay estate taxes from the respective dates such taxes were due, the balance of such interest to be charged to the principal of the trust fund (Central Hanover Bank & Trust Co. v. Peabody, 190 Misc. 66, 73; Matter of Chambers, 54 N. Y. S. 2d 88, 93; Matter of Reid, 193 Misc. 154).
We do not, on this phase of the case, follow the opinion in Matter of Harjes (170 Misc. 431). At the last session of the Legislature and after the argument of this appeal, chapter 822 of the Laws of 1950 was enacted, which amends section 124 of the Decedent Estate Law, so far as is here pertinent, as follows: “ In the absence of directions to the contrary * * * (iv) any interest resulting from late payment of the tax shall be apportioned in the same manner as the tax and shall be charged wholly to corpus
Section 2 of the statute provides that it is to take effect on September 1, 1950, and is to apply to the estates of all persons dying on or after such date. This statute was designed to resolve a conflict among lower New York courts which have expressed different views (Central Hanover Bank & Trust Co. v. Peabody, 190 Misc. 66, supra, which view is here adopted; Matter of Harjes, 170 Misc. 431, supra, which view is here rejected; and other cases such as Matter of Korn, N. Y. L. J., Oct. 20, 1938, p. 1212, col. 7; Matter of Schmidt, 36 N. Y. S. 2d *662 490; Matter of Andrus, 169 Misc. 740, and Matter of Clark, 169 Misc. 202, affd. on another point 249 App. Div. 845, revd. on another point 275 N. Y. 1, which last-mentioned cases would seem to express the view adopted by the Legislature in the 1950 amendment which, however, by its terms is entirely prospective in effect).
The final order below in the special proceeding under section 79 of the Civil Practice Act is accordingly modified to hold section 4 of the Florida apportionment statute valid in its application to the trust fund here involved, and to instruct the petitioner, as trustee, to pay from principal its prorata share of both the Florida and Federal estates taxes as such share is determined by the County Court of Florida in accordance with the laws of Florida, and to instruct the petitioner with respect to interest on the estate taxes, payable from the trust, as heretofore set forth in this opinion and, as so modified, the order is affirmed. Costs will be allowed to each party who appeared on this appeal and filed briefs herein, payable out of the corpus of the trust fund. Settle order.
Glennon, J. P., and Callahan, J., concur; Dore, J., concurs in result.
Order modified in accordance with the opinion herein, with costs to each party who appeared on this appeal and filed briefs herein, payable out of the corpus of the trust fund and, as so modified, affirmed. Settle order on notice.