DELAWARE TRUST COMPANY, a Banking Corporation of the State of Delaware, Executor of the Will of Basil B. G. Blackstone, deceased,

*vs.*

MARGARET PATTERSON BLACKSTONE, Widow of Decedent, MARGARET PATTERSON BLACKSTONE and ANN DOREMUS BLACKSTONE, Minor Children of Decedent, ANNIE C. BLACKSTONE, Surviving Mother of Decedent, and DELAWARE TRUST COMPANY, Trustee of a certain *inter vivos* trust created by Basil B. G. Blackstone, Decedent.

*New Castle, May 17, 1951.*

*John Van Brunt, Jr.,* of Killoran & Van Brunt, Wilmington, for the plaintiff.

*Vincent A. Theisen,* Wilmington, for the respondent, Margaret Patterson Blackstone.

*Albert J. Stiftel,* Wilmington, for Albert L. Massey, Guardian *ad litem* for the minor defendants.

WOLCOTT, Chancellor: The testator died August 31, 1949 leaving a will and codicil which were duly admitted to probate. Item VI of the codicil provided in part as follows:

"Item VI. I further order and direct that all Federal and State estate, inheritance and other succession taxes, whether assessed against

my estate as a whole, any specific devise or bequest, any distributive share thereof, or any life estate or interest vested in remainder by the terms of my last Will and Testament and by the terms of this Codicil thereto, shall be paid out of my residuary estate to the extent that such taxes become due and payable within a period of fifteen (15) months from and after my death."

For federal estate tax purposes, the taxable estate of the testator included property passing under his will and codicil and property passing outside of his will by operation of law. The non-testamentary taxable property of the testator included real estate held as tenant by the entireties; United States Government Bonds jointly owned with the testator's daughters, and life insurance for the benefit of the testator's widow, his two daughters and his mother.

The entire taxable gross estate of the testator amounted to $431,818.27 and the approximate value of the testator's non-testamentary taxable property was $113,905.25 or slightly more than one-fourth of the entire gross taxable estate.

The executor seeks to be instructed as to the effect of Item VI of the codicil to the will and as to whether or not in paying federal and state succession taxes such payment should be made from the residuary estate. The precise question raised is whether or not the testator, by Item VI of the codicil, intended to impose upon his residuary estate the taxes assessed against non-testamentary as well as testamentary property.

The widow of the testator contends that Item VI of the codicil is a direction to discharge from the residuary estate all taxes including taxes assessed by reason of the non-testamentary property. The guardian *ad litem* for the minor children of the testator contends that Item VI of the codicil is a direction to pay from the residuary estate only those taxes assessed against the testamentary property.

It is suggested that the Court of Chancery is without jurisdiction to hear and determine the subject matter of the case at bar for the reason that 47 *Laws of Delaware, Chapter* 405, confers jurisdiction upon the Orphans' Court to make prorations of succession taxes and that, accordingly, an executor is not entitled to instructions by the Court of Chancery when the matter relates to the proration of taxes.

██ ██ However, the instructions of executors and other fiduciaries is a jurisdictional field within which the Court of Chancery has historically operated. *Delaware Trust Company v. McCune, ante p.* 113, 80 *A.* 2*d* 507. The instruction of executors in connection with the administration of estates is an extension of equitable jurisdiction originally exercised over trust and fiduciary relationships and, as such, is a part of the exclusive jurisdiction of the Court of Chancery. 1 *Pomeroy's Eq. Juris.,* § 156, *p.* 211. Even though the Legislature provides in another tribunal a remedy for matters formerly cognizable in a court of equity, that fact will not deprive equity of the jurisdiction it formerly exercised unless, by statute, a clear or express indication has been made of legislative intent to deprive equity of jurisdiction. 1 *Pomeroy's Equity Juris.,* § 279, *p.* 620; *Glanding v. Industrial Trust Co.,* 28 *Del. Ch.* 499, 45 *A.* 2*d* 553.

██ With the foregoing principles in mind and applying them to the case at bar, it seems clear that the Court of Chancery may continue to give instruction to executors as part of its general jurisdiction in that respect, even though by statute, the Orphans' Court is empowered to make apportionments of succession taxes. The question not having been raised as to whether equity within the limits of sound discretion should exercise its jurisdiction when other remedies exist, it is not necessary for me to decide the question. I am satisfied that jurisdictional requirements are satisfied in the case at bar. As will appear hereafter, complete relief can be given.

The case at bar presents the narrow question of whether the phrase "my estate as a whole", appearing in Item VI of the codicil, is sufficiently broad to embrace within its terms all of the testator's property included in his gross taxable estate. The basic question to be ascertained in this case, as in all will construction cases, is the intent of the testator.

Counsel have cited a number of decisions of other states construing language in wills concerning the apportionment of taxes similar to the language before me. There is a division among the reported authorities as to whether or not the use of the phrases "my estate" or "my entire estate" and similar expressions is sufficient to indicate the intention of a testator to charge all federal and state estate and inheritance taxes against the residuary estate.

It is quite apparent, however, from a reading of the cases that each direction with respect to apportionment or non-apportionment of taxes can be decided only in the light of the particular circumstances of the case. The question is one primarily of intent and narrows itself to a determination of what in fact the testator intended to accomplish.

The intent of the testator in the instant case is clarified by the circumstances surrounding and leading up to the execution of the codicil which contains the direction to the executor to pay taxes out of the residuary estate. The will of the testator made no mention of the payment of taxes and, having been executed on October 23, 1940, prior to the passage of any apportionment act, the effect of the failure to provide a specific method of apportionment under the then law would have resulted in the payment of all estate taxes out of his residuary estate. *Equitable Trust Co. v. Richards*, (*Del. Orph.*) 31 *Del. Ch.* 564, 73 *A.* 2d 437. The testator must be presumed to have known of and intended that result. In the 1947 session of the Legislature, however, an act to provide for the apportionment of such

taxes was introduced on January 23, 1947 and passed by the House of Representatives on March 4, 1947. The Apportionment Act then passed the Senate on March 27, 1947 and was finally approved by the Governor on April 2, 1947. The first Apportionment Act, 46 *Laws of Delaware, Chapter 119*, was amended by the 1949 session of the Legislature into the form in which it is applicable to the instant case.

It seems of great significance to me that the codicil at bar was executed on March 6, 1947, two days after the first Apportionment Act had passed the House of Representatives. It is difficult to ascribe any reason for the provision in the codicil with respect to non-apportionment of taxes except in the light of the passage two days before of an apportionment statute in the House. The reason for this is that prior to the passage of an apportionment statute in Delaware, the direction with regard to succession taxes contained in the codicil was merely declaratory of the then existing law to the effect that, in the absence of a direction to the contrary, all such taxes should be paid out of the residuary estate. The language used served no useful purpose unless it was a provision to avoid the effect of apportionment under the pending statute. It is, of course, true that the apportionment statute was not the law at the time the codicil was executed, but it seems reasonable to assume that the codicil was executed with the knowledge of the possibility of the passage of such a law and with the intent to avoid the effect of it and to continue in effect the result with respect to the payment of taxes that had theretofore been true with respect to the testator's will.

Furthermore, since by his will the testator had provided for a distributive scheme providing for the payment of all succession taxes out of his residuary estate, regarding the language as intending to avoid the effect of an apportionment statute is to continue the same administrative plan that the testator had unquestionably provided for by his will.

It seems to me, therefore, that the only fair inference to be drawn as to the intent of the testator in the execution of the codicil was that he intended to avoid the effect of the possible passage of the apportionment act then pending in the Legislature and that he intended to continue with respect to the payment of taxes the same plan that would have resulted under his will in the absence of such an apportionment act.

Turning now to the language of Item VI of the codicil, itself, it is to be noted that the testator directed that "all Federal and State estate, inheritance and other succession taxes" be paid out of his residuary estate. Since the testator intended to avoid the effect of apportionment and since, prior to an apportionment statute, federal taxes levied upon non-testamentary property would have been paid from his residuary estate, it seems clear to me that the use of the word "all" was intended by the testator to include federal estate taxes levied upon either testamentary or non-testamentary property. The use of the phrase "whether assessed against my estate as a whole, any specific devise or bequest, any distributive share thereof, or any life estate or interest vested in remainder by the terms of" his will is further indication of his general intent to provide for the payment out of his residuary estate of all taxes, liability for which had occurred under the federal or state estate tax laws. It is to be noted that the last quoted language is in the disjunctive so that the phrases following the language, "estate as a whole", are not necessarily to be regarded as definitive of the preceding phrase. It seems to me that the fair meaning of the quoted language is that the testator was seeking to cover all interests whether testamentary or non-testamentary which, as a result of his death, would have created tax liability.

I conclude, therefore, that Item VI of the codicil is a specific direction to the executor to pay all federal and state taxes levied against the taxable estate of the testator

137

from his residuary estate. The executor has sought instructions upon this point. The foregoing is sufficient for its instruction.