WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, and LAMMOT DUPONT COPELAND, Executors of the Last Will and Testament of Charles Copeland, deceased,

*vs.*

LAMMOT DUPONT COPELAND, PAMELA CUNNINGHAM COPELAND, LAMMOT DUPONT COPELAND, JR., LOUISA D'ANDELOT COPELAND, GERRET VAN SWERINGEN COPELAND and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under an Agreement dated April 4, 1930.

*Orphans' Court, New Castle, July 31, 1952.*

HERRMANN, J., sitting.

*Caleb S. Layton* and *Charles F. Richards*, of Richards, Layton & Finger, and *William S. Potter*, of Berl, Potter & Anderson, for plaintiffs.

*Lammot duPont Copeland* and *Pamela Cunningham Copeland*, defendants, *in propria persona*.

*Alexander L. Nichols*, of Morris, Steel, Nichols & Arsht, for defendants Lammot duPont Copeland, Jr., Louisa D'Andelot Copeland, Gerret Van Sweringen Copeland and Wilmington Trust Company, trustee.

HERRMANN, Judge: The plaintiffs are the executors under the will of Charles Copeland, deceased. Pursuant to the provisions

of the Delaware Apportionment Statute[1], the plaintiffs seek proration of the federal and Delaware estate taxes which have been levied against the estate of Charles Copeland and which have been paid by them as executors.

Insofar as need be stated here, the uncontroverted facts are these:

Charles Copeland died on February 3, 1944. His will, dated December 16, 1942, was duly probated and the plaintiffs qualified as executors thereunder. The plaintiffs filed federal and Delaware estate tax returns and, in various remittances made in 1945, 1948, 1949 and 1951, they paid the estate taxes, both federal and state, as ultimately levied and assessed upon the gross estate of the decedent. In the assessment of such taxes, the authorities included in the gross estate of the decedent the value of certain securities which had been transferred to the Wilmington Trust Company, as trustee, under a trust agreement with Charles Copeland, as trustor, dated April 4, 1930. The individual defendants are the beneficiaries of the trust created by that agreement.

The trust agreement of 1930 established a funded life insurance trust. Certain securities were transferred to the trustee together with certain life insurance policies. Under the agreement, the trustee was required to use the income from the securities for the purpose of paying the premiums on the insurance policies. Upon the death of the trustor, the trustee was required to collect the proceeds of the policies, to hold them as a part of the corpus of the trust estate, and to pay over the net income to the decedent's son, Lammot duPont Copeland[2], during his lifetime. Upon the death of the son, it was required that the trust estate be divided into equal shares for the benefit of the son's wife[3], his children[4], and the issue of his deceased children.

---

[1] 46 *Del.Laws, Ch.* 119, approved April 2, 1947, *as amended by* 47 *Del.Laws, Ch.* 405, approved July 1, 1949.

[2] Defendant herein.

[3] Pamela Cunningham Copeland, defendant herein.

[4] The other individual defendants herein.

It is agreed that 22.98179305% of the estate taxes paid was attributable to the requirement that the gross estate include property transferred under the trust agreement of 1930. Otherwise stated, the estate tax burden was increased by 22.98179305% by reason of the requirement that the gross estate include the value of the securities involved in the *inter vivos* transfer.

The plaintiffs contend that the Apportionment Statute applies, that the trust estate is chargeable with the stated percentage of the taxes paid, and that the Wilmington Trust Company, as trustee, and the individual defendants, as beneficiaries of the trust, should be required now to pay their equitable portion of the estate taxes in accordance with the statute.

The defendants, Lammot duPont Copeland and Pamela Cunningham Copeland, by their answer filed, admit the factual allegations of the petition and take a neutral position regarding the legal questions involved[5]. The other defendants, by their answer filed, admit the factual allegations of the petition, but raise the following legal issues:

1. The will of Charles Copeland and the trust agreement of 1930 provide for allocation of estate taxes in a manner different from that provided by the Apportionment Statute and, therefore, the Apportionment Statute is not applicable to the trust estate.

2. Application of the Apportionment Statute to the trust estate would violate the due process clause and the equal protection clause of the Fourteenth Amendment to the Federal Constitution.

3. In any event, the Apportionment Statute may not be invoked with respect to estate taxes due and payable prior to the effective date of the statute.

My conclusions upon the two following questions dispose of the cause in this court:

I. Is the application of the Apportionment Statute to the trust estate barred by the trust agreement or the will?

---

[5] Accordingly, references herein to contentions of "defendants" do not apply to defendants Lammot duPont Copeland and Pamela Cunningham Copeland.

II. Is the application of the Apportionment Statute to the trust estate barred by the Fourteenth Amendment to the Constitution of the United States?

## I. *The Trust Agreement and the Will*

*Section* 1(c) of the Apportionment Statute of 1949 provides that the statute

"* * * shall not apply where and to the extent that a testator provides in his will for another method of apportionment or allocation" of estate taxes "or where and to the extent that the written terms of an inter vivos transfer provide for another method of apportionment or allocation of such taxes which may be imposed with respect to the specific fund so transferred."

[1] The method of apportionment or allocation of estate taxes enforceable under the Apportionment Statute may be stated to be the equitable proration of the tax paid among those persons interested in the estate and to whom property, which has been required to be included in the gross estate, is or may be transferred or to whom any benefit accrues. The Statute provides:

"* * * Such proration shall be made in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests, and benefits received by all such persons interested in the estate except that in making such proration allowances shall be made for any exemptions granted by the Act imposing the tax and for any deductions allowed by such Act for the purpose of arriving at the value of the net estate; and except that in cases where a trust is created, or other provision made whereby any person is given an interest in income or an estate for years, or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates. For the purposes of this Section the term 'persons interested in the estate' shall with respect to both State and Federal Taxes include all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest, whether under a will or intestacy, or by reason of any transfer, trust, estate, interest, right, power, or relinquishment of power taxable under any of the aforementioned laws providing for the levy or assessment of estate taxes."

Hence, the subordinate question here is whether, by the provisions of the trust agreement or of the will, the decedent indicated his intent that the trust estate and its beneficiaries be relieved of all or any part of the burden of estate taxes.

The defendants contend that provisions of the will and of the trust agreement bring this case within the exception created by *Section* 1(c) of the statute. They assert that the two documents manifest the intention of Charles Copeland that all estate taxes be borne by the residue of his testamentary estate and that, since the will and the trust agreement thus provide for another method of apportionment, the provisions of the Apportionment Statute are not applicable to the trust estate. In support of this contention, the defendants point to Item Twelfth of the trust agreement and Item Seventh of the will.

Item Twelfth of the trust agreement provides:

"*Twelfth:* Trustee is authorized to purchase as an investment for this trust fund any securities or other property, real or personal, belonging to the estate of Trustor; furthermore, Trustee may loan to the Executor or other representative of Trustor's estate, out of the principal of this trust fund, such amounts as may be deemed necessary for the purpose of paying any inheritance, succession or estate taxes which may be levied, under the laws of the United States or of any state, against Trustor's estate or against any portion thereof or any interest therein which shall pass to or vest in any beneficiary of this trust, or for the payment of any expenses of the administration or for the protection, preservation or improvement of Trustor's estate. In making such loans, Trustee may use its own discretion as to whether the loans shall be secured or unsecured."

Item Seventh of the will provides:

"Seventh Item:—I authorize and empower my Executors, hereinafter named, to sell, either at public or private sale, at such prices and upon such terms and conditions as they may deem proper, any and all of the real and personal property at any time constituting a part of my estate, and to assign, transfer, convey and deliver the same to the purchaser or purchasers thereof, without liability on the part of such purchaser or purchasers as to the application, non-application or misapplication of the purchase money or any part thereof, the proceeds received from such sale or sales to be distributed in the same manner as the property sold would have been if it had not been sold.

"I also authorize and empower my Executors to borrow, during the administration of my estate, any sum or sums of money they may deem necessary for the purpose of discharging any of my debts or the tax liabilities of my estate, and to pledge any property that may be owned by me at the time of my death as security for any sum or sums of money so borrowed and thereafter to pay any such loans, so made, in the course of the administration of my estate."

The defendants maintain that these provisions make it obvious and certain that the decedent intended that his executors should

pay, from his residuary estate, all tax liabilities of his "estate", and that it is clear from the context that in using that word the decedent meant the tax liabilities of both his testamentary estate and his non-testamentary estate.

I cannot agree that the quoted provisions of the trust agreement and of the will manifest the intent of the decedent to relieve non-testamentary property from the burden of estate taxes and to impose upon the residue of his probate estate all property, testamentary and non-testamentary alike.

■ It is apparent to me that in using the word "estate" throughout trust item twelfth, the decedent meant probate or testamentary estate only. For example, the trustee was authorized to purchase securities belonging to the "estate" of the trustor. The word "estate" as there used must refer to probate estate because it would have been an apparent incongruity for the decedent to have authorized the trustee to purchase securities belonging to the non-probate estate which it, itself, was to administer. This conclusion is supported by the subsequent provisions that the trustee might, if necessary, make loans to the "Executor or other representative of Trustor's estate" for the purpose of paying "estate taxes" and expenses of administration or for the protection of the "Trustor's estate". The reference to "Executor or other representative" demonstrates clearly that, in using the word "estate" in trust item twelfth, the decedent intended probate estate and nothing more. Again, it would have been quite incongruous for the decedent to have referred to the executor of a non-testamentary estate.

Moreover, will item seventh authorizes the executors to sell property constituting a part of the testator's "estate". Since executors sell only probate property, it is plain that the word "estate", as there used, means testamentary estate. Again, when in this item the testator empowered his executors to borrow money during the administration of his "estate", he could have intended only the probate estate with which his executors would be concerned.

Any lingering doubt is dispelled, I think, by item eighth of the will which provides as follows:

"Eighth Item:—I direct that all of the legacies and other beneficial estates in this will created and provided for shall be paid free and clear of any estate, inheritance, succession or other taxes which, if chargeable, shall be paid out of the principal of my residuary estate."

In item eighth the testator was dealing specifically with tax burdens and with his residuary estate. It seems logical to say that if he intended that the taxes on non-probate property were to be paid out of his residuary estate, it would have been just as easy for him to have so stated as it was for him to expressly limit the tax burden upon the residuary estate to "the legacies and other beneficial estates in this will created".

In order to fall within the exception of the Apportionment Statute, it is necessary that the intent of the decedent be clearly expressed. Before the exception may be found applicable, there must be a clear and unequivocal direction or grant of discretion which is not susceptible of doubtful import. *In re Mills' Will*, 272 *App.Div.* 229, 70 *N.Y.S.2d* 746, affirmed 297 *N.Y.* 1012, 80 *N.E. 2d* 535; see 15 *A.L.R.2d, p.* 1224. That criterion is not met in the instant case.

The case of *Delaware Trust Co. v. Blackstone*, 32 *Del.Ch.* 130, 81 *A.2d* 126, does not aid the defendants. The will which was construed there is altogether distinguishable in context and circumstance with respect to the use of the word "estate".

For the reasons stated, it is held that neither the trust agreement nor the will contain any clear direction or plain grant of discretion to absolve the trust estate from the burden of estate taxes and that, therefore, the application of the Apportionment Statute is not barred by any provision by the decedent for another method of apportionment or allocation of estate taxes.

By reason of the foregoing conclusion, it becomes necessary to consider the constitutional question.

II. *The Fourteenth Amendment*

The defendants assert that upon the death of Charles Copeland in 1944, and prior to the enactment of the Apportionment Statute in 1947, some or all of the beneficial interests created by the *inter*

*vivos* trust had become vested in the trust beneficiaries. They point out that, under the due process clause of the Fourteenth Amendment to the Federal Constitution, vested rights may not be impaired or destroyed by any state statute subsequently enacted. They maintain that the application of the Apportionment Statute to the non-testamentary trust estate in the instant case would, therefore, violate the due process clause of the Fourteenth Amendment.

The issue thus presented has been heretofore resolved by this court. In *Equitable Trust Co. v. Richards*, (Del.Orph.), 31 *Del.Ch.* 564, 73 *A.2d* 437 (1950) the then President Judge of this court examined the Apportionment Statute in the light of the same attack. It was there held that the statute was intended to apply retroactively and that it violated the due process clause and was unconstitutional when it affected non-testamentary property rights that had vested prior to its enactment.

I think that the prior determination of this question by this court in the *Richards* case is controlling and binding upon me. It is recent. It is directly on point[6]. It is the considered judgment and pronouncement of the then President Judge of this court, then also the Chancellor of Delaware and the Presiding Judge of the Supreme Court of Delaware.

The plaintiffs urge that the holding in the *Richards* case is erroneous and that it should not be followed in the case at bar. They assert that a contention which is most vigorously pressed here was neither raised nor considered by the court there. Briefly stated, that contention is this: The fundamental basis upon which the Apportionment Statute can be applied retrospectively to an *inter vivos* trust, created prior to the passage of the Statute, rests upon the principle of equitable contribution; that that principle was a part of the equitable jurisprudence of this State long prior to the enactment of the Apportionment Statute; that the Apportionment Statute constitutes no more than a statutory recognition

---

[6] The *Richards* case is no less precedent because it dealt with the Apportionment Statute of 1947. The amended statute of 1949 is substantially the same as the Act of 1947 insofar as the question here under consideration is concerned.

of settled equitable principles applicable to the proper distribution of the burden of estate taxes and that the statute simply provides the judicial machinery for the determination of such distribution; that since the principle of equitable contribution existed at the time of the creation of the trust estate, the trust beneficiaries took their interests subject to the liabilities imposed by that principle; that from the very time of its creation, the trust estate of 1930 was subject to estate taxes and it cannot be said that the interests of the trust beneficiaries "vested" free and clear of tax burdens; and that, therefore, the retroactive application of the statute would not interfere with "vested rights" as that term is based in giving effect to the Fourteenth Amendment.

■ There is nothing to indicate that the foregoing argument was presented to or considered by the court in the *Richards* case. I shall assume that it was neither presented nor considered. Nevertheless, I consider the question to be no longer an open one in this court. The doctrine of *stare decisis* requires me to refrain from disturbing a prior decision of this court unless it can be said that the previous decision is clearly and manifestly erroneous. *Hackett v. Bethlehem Steel Co.*, 5 *W.W. Harr.* 317, 165 *A.* 332. Obviously, such statement may not be made regarding the decision in the *Richards* case.

■ While a new argument is being urged here, the issue decided in the *Richards* case is the very same issue presented in the instant case. Presentation of a new argument, however persuasive, does not justify upsetting a prior decision of this court upon the same issue unless the argument be of such convincing cogency as to compel the conclusion that the former decision is legally indefensible and palpably wrong. *Hall v. City of Madison*, 128 *Wis.* 132, 107 *N.W.* 31. I am of the opinion that the new argument here presented lacks the degree of cogency required to overcome the rule of *stare decisis*.

Finally, I am unable to accept the plaintiffs' contention that a single prior decision does not afford the basis for the application of the doctrine of *stare decisis*. While such rule does enjoy some

recognition, 14 *Am. Jur.*, *Courts*, § 82, it is, I think, contrary to sound judicial policy.

■ Accordingly, and following the *Richards* case, it is held that the Apportionment Statute may not be applied to the trust estate of 1930 because such application would affect rights that had vested prior to the enactment of the Statute and would violate the due process clause of the Fourteenth Amendment to the Federal Constitution.

In view of the foregoing conclusion, it is unnecessary, at this time, to decide the other questions presented.

The petition must be denied.