WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, and LAMMOT DUPONT COPELAND, Executors of the Last Will and Testament of Charles Copeland, deceased,
Appellants,

vs.

LAMMOT DUPONT COPELAND, PAMELA CUNNINGHAM COPELAND, LAMMOT DUPONT COPELAND, JR., LOUISA D'ANDELOT COPELAND, GERRET VAN SWERINGEN COPELAND and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under an Agreement dated April 4, 1930,
Appellees.

*Supreme Court, On Appeal, February 5, 1953.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ., sitting.

*Caleb S. Layton, Charles F. Richards* and *William S. Potter*, of Wilmington, for appellants.

*Alexander L. Nichols*, of Wilmington, for appellees Lammot duPont Copeland, Jr., Louisa D'Andelot Copeland, Gerret Van Sweringen Copeland and Wilmington Trust Co., trustee under an agreement dated April 4, 1930.

SOUTHERLAND, Chief Justice, delivering the opinion of the court:

This case presents the question whether the estate of the late Charles Copeland is subject to the provisions of the act of April 2, 1947, as amended, which directs, in the absence of contrary instructions from a decedent, an equitable apportionment of the liability for the payment of estate taxes; and if subject to the act, to what extent.

The facts are these:

On April 4, 1930, Charles Copeland, a resident of New Castle County, Delaware, transferred to Wilmington Trust Company certain insurance policies on his life and certain securities, in trust to apply the income from such securities to the payment of the premiums due on the policies, and upon the death of the settlor to hold the proceeds of the policies upon further trusts for the benefit of the settlor's son, and of the son's widow and children.

On December 16, 1942, Mr. Copeland (herein "the decedent") executed his will. On February 3, 1944, he died. The will was duly proved, and the plaintiffs duly qualified as executors thereof.

On April 13, 1945, the executors filed a federal estate tax return, and paid an estate tax of $5,605,870.11. On June 29, 1945, the Delaware estate tax return was filed and a tax of $700,000 was paid. The federal return reported the fact of the 1930 transfer in trust, above described, but did not include the property so transferred as a part of the gross estate of the decedent.

On April 2, 1947, there was passed the apportionment act, *Vol.* 46, *Laws of Del., Ch.* 119, amended on July 1, 1949, in respects not here pertinent, *Vol.* 47, *Laws of Del., Ch.* 405.

By letter of April 9, 1948, the Commissioner of Internal Revenue claimed a deficiency in federal estate taxes of upwards of $9,000,000. The proposed assessment of additional taxes was predicated chiefly upon a determination that there should be included in the gross estate of decedent the value of the property in the 1930 trust, as well as other property transferred by decedent in his lifetime. As to the 1930 trust the Commissioner claimed that the corpus thereof was includible under the provisions of one or more of certain sections of the *Internal Revenue Code, Secs.* 811(c), 811(d), and 811(g), 26 *U.S.C.A.* § 811(c, d, g).

The executors opposed the assessment and filed a petition in the Tax Court seeking a redetermination of the deficiency. Thereafter a settlement of the matter was reached. The valuation of the testamentary estate was increased from $11,324,447.53 (as returned by the executors) to $11,552,906.59, and there was added to the value of the gross estate a percentage of the value of a part of the corpus of the 1930 trust, such additional value amounting to $3,447,321.31. On June 15, 1951, a judgment was entered in the Tax Court determining a deficiency in federal estate taxes in the sum of $3,332,505.40.

The executors have paid in full all federal and state estate taxes. Payments made before April 2, 1947, amounted to the sum of $6,305,870.11; payments after that date, to the sum of $3,119,-574.35. On February 1, 1952, the executors petitioned the Orphans'

Court for an equitable apportionment of the entire amount. Showing that the proportion which the value of the non-probate estate bears to the total value of the gross estate (after allowances and deductions) is 22.98179305 per cent, the executors sought to charge the corpus of the 1930 trust with the payment of a sum equal to .2298179305 of the total federal and state estate taxes, that is, with the sum of $2,166,973.99. The trustee of the 1930 trust (herein "the trustee") and the guardian of the minor defendants (the children of Lammot duPont Copeland, son of the decedent) resisted the application.[1]

The court below denied the petition upon the authority of the decision in *Equitable Trust Co. v. Richards*, 31 *Del.Ch.* 564, 73 *A.2d* 437, which holds that the apportionment act, though by its terms retroactive, may not constitutionally be applied to estates of decedents dying prior to the date of its enactment. See *ante p.* 96, 91 *A.2d* 200. The executors have appealed.

In the court below the defendants made three contentions in opposing the relief sought and renew them here. They are as follows:

I.  That the provisions of the decedent's will and of the 1930 trust agreement provide, at least by implication, for payment of all estate taxes from his residuary estate, and hence the apportionment act does not apply.

II.  That to apply the apportionment act to the case would violate the due process clause and the equal protection clause of the Fourteenth Amendment to the federal Constitution.

III.  That, even if the apportionment act may constitutionally be applied to the case, its application is by its terms limited to an apportionment of that part of the estate taxes paid after April 2, 1947, the date of its passage.

We take up these questions in order.

I.  The apportionment act, after providing for an equitable

---

[1] The other defendants assumed a neutral position, and references herein to "the defendants" do not include them.

apportionment of estate taxes among persons interested in the taxable estate of a decedent, and prescribing a formula for its determination, expressly declares that the act "shall not apply where and to the extent that a testator provides in his will for another method of apportionment or allocation" of estate taxes "or where and to the extent that the written terms of an *inter vivos* transfer provide for another method of apportionment or allocation of such taxes" in respect of the property so transferred.

■ Defendants urge that the provisions of paragraph Twelfth of the trust agreement of 1930, read in connection with the provisions of items Seventh and Eighth of the decedent's will, reveal an intention to charge all estate taxes against the residuary estate passing under his will.

Paragraph Twelfth of the trust agreement provides in part:

"Trustee may loan to the Executor or other representative of Trustor's estate, out of the principal of this trust fund, such amounts as may be deemed necessary for the purpose of paying any inheritance, succession or estate taxes which may be levied, under the laws of the United States or of any state, against Trustor's estate or against any portion thereof or any interest therein which shall pass to or vest in any beneficiary of this trust, or for the payment of any expenses of the administration or for the protection, preservation or improvement of Trustor's estate."

This language lends no support to defendants' contention. Clearly, its primary purpose was to supply a source of ready cash to the executors if they should need it in settling a very large estate. The "estate" to be administered and protected is the testator's testamentary estate—not his gross taxable estate; and the reference to estate taxes is to taxes imposed on the testamentary estate. The reference to taxes that may be levied "against any portion" of his estate "which shall pass to or vest in any beneficiary of this trust" is not to taxes levied against the beneficiaries of the trust as such; it merely embodies a description of a portion of the testamentary estate, i. e., such portion as might pass to persons who were also beneficiaries of the trust. Nothing appears that justifies the inference that defendants seek to draw, viz., that the power of the trustee to lend money to pay estate taxes levied against the testamentary estate implies an intention that the residuary estate was to assume the payment of an estate tax that might be assessed

with respect to the trust property. The argument is a *non sequitur*.

Item Seventh of the will provides in part:

"I also authorize and empower my Executors to borrow, during the administration of my estate, any sum or sums of money they may deem necessary for the purpose of discharging any of my debts or the tax liabilities of my estate, * * *."

This so-called coordinate provision in Item Seventh of decedent's will, conferring power upon the executors to borrow for the purpose, among others, of "discharging any of my debts or the tax liabilities of my estate", is likewise of no help to defendants. The "tax liabilities" are those of his "estate", and that estate is the testamentary estate only, as the context makes clear.

Finally, the provisions of Item Eighth of the will are a complete answer to defendants' first contention. They are as follows:

"I direct that all of the legacies and other beneficial estate *in this will created and provided for* shall be paid free and clear of any estate, inheritance, succession or other taxes which, if chargeable, shall be paid out of the principal of my residuary estate." (Emphasis supplied.)

By this provision the testator dealt specifically with the payment of estate taxes. The command to the executors to pay such taxes is limited to taxes upon estates created by the will. If the testator had intended his residuary estate to bear the burden of other estate taxes, he could readily have said so. The court below correctly held that the testator's intention to depart from the statutory scheme of apportionment must clearly appear. It may not be derived from ambiguous language; much less may it be founded upon strained or tenuous reasoning. See the cases collected in the note at 15 *A.L.R.2d* 1216, 1230 *et seq*. In the case at bar the language of the will respecting the payment of estate taxes embodies the plain intent that the residuary estate shall assume the payment of such estate taxes, and only such estate taxes, as are levied in respect of property passing under the will.

We accordingly hold that neither the trust agreement of 1930 nor the decedent's will provides for a method of apportionment or allocation of estate taxes different from that prescribed by the apportionment act.

## II. *Constitutionality of the apportionment act.*

The defendants contend that the act, in so far as it applies to estates of decedents dying before the date of its passage, offends against the due process and equal protection clauses of the Fourteenth Amendment and is unconstitutional. As above noted, it was so held in *Equitable Trust Co. v. Richards, supra.* The court below felt bound—understandably—by this decision, and sustained the defense and denied relief. The executors insist that the *Richards* case was wrongly decided.

The facts of the *Richards* case were somewhat similar to those of the case at bar. Petitions were filed by the executors of two decedents for apportionment of estate taxes. Both decedents had died prior to the passage of the act. Certain personal property which did not pass under their wills and formed no part of the testamentary estate constituted a part of their gross taxable estates under the Internal Revenue Code, and estate taxes were paid by the executors in respect of such property. President Judge Harrington of the Orphans' Court held that the non-testamentary property passed immediately upon the respective deaths of the testators to the persons entitled thereto, that their interest in such property had vested prior to the enactment of the statute, and that to apply the act to the recipients of such property would destroy vested rights and violate the Fourteenth Amendment to the federal Constitution. The court approved and followed the reasoning of the Supreme Court of Connecticut in the case of *Parlato v. McCarthy,* 136 *Conn.* 126, 69 *A.2d* 648. An examination of the reasoning of that case shows that it was based upon the assumption that an important question to be resolved by the courts in determining the constitutionality of the Connecticut proration statute was whether or not such statute should be deemed an exercise of the taxing power. This was upon the theory that a retroactive tax might be valid though impairing vested rights; whereas a non-taxing statute may not be permitted to impair such rights. President Judge Harrington of the Orphans' Court, 31 *Del.Ch.* 564, 73 *A.2d* 437, 441, adopted this reasoning, saying: "The primary question is whether the Proration Act is a taxing statute." Holding the apportionment act not to be a taxing statute,

he applied the rule announced in the *Parlato* case and declared the act unconstitutional as to estates of decedents dying prior to the date of its enactment.

It is apparent, from a reading of the opinions in the *Richards* case and the *Parlato* case, that both courts assumed that the apportionment acts effected a change in the law by the imposition of a liability which prior to the enactment of the statute did not exist, that is, a liability to make an equitable contribution to the payment of the tax; thus it was held that the statute sought to fasten upon the transferees of non-probate property burdens which theretofore they had not borne.

Let us see if this is a correct view of the effect of our apportionment act.

The pertinent provisions of the statute are set forth in the margin.[2] Similar statutes have been enacted in other states, and

---

[2] Section 1. (a) Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, temporary administrator, trustee, or other person acting in a fiduciary capacity (or individually), has after the effective date of this Act paid an estate tax levied or assessed under the provisions of Article II of Chapter 6 of the Revised Code of Delaware, 1935, as amended (subdivision 143 of said Code), providing for a tax known as 'Delaware Estate Tax,' or under any law amendatory thereof or supplemental thereto, or under any other law hereafter enacted providing for the same or a different estate tax, or under the provisions of any estate tax law of the United States heretofore or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such proration shall be made in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests, and benefits received by all such persons interested in the estate * * *

\*　　　　\*　　　　\*　　　　\*　　　　\*

"(b) The said Orphans Court is hereby granted jurisdiction and all power necessary to make the prorations and the orders directing the payment of amounts of tax contemplated by subdivision (a) of this Section. Such jurisdiction may be invoked by petition filed in said Court by any such executor, administrator, temporary administrator, trustee, or other person acting in a fiduciary capacity, or any other person having such an interest as may in the judgment of said Court entitle him to file such a petition." *Vol. 47, Laws of Del., Ch. 405.*

our act appears to be modeled upon the New York apportionment act, *Ch. 709, Laws of 1930, Decedent Estate Law, McK.Consol. Laws, c.* 13, § 124. The problem dealt with in these acts, and the legislative policy which they declare, are at this day so widely understood that elaborate analysis of their provisions is unnecessary.

■ After the enactment of the federal estate tax law in 1916, 39 *Stat.L.* 756, *ch.* 463, the state courts were confronted with the problem of apportionment, i. e., what persons or interests should bear the ultimate burden of the tax. Since an estate tax is a tax on the right to transfer—not to receive—property, it was generally held that the entire burden of such taxes must be borne by the residuary estate. See, for example, *Plunkett v. Old Colony Trust Co.*, 1919, 233 *Mass.* 471, 124 *N.E.* 265, 7 *A.L.R.* 696, and *Re Hamlin*, 1919, 226 *N.Y.* 407, 124 *N.E.* 4, 7 *A.L.R.* 701. The question was treated as one of Congressional intent, and thus as a federal question. The increasingly heavy burden of the federal estate taxes, and the inclusion in a decedent's "gross estate" of property not passing under his will, wrought results that were in many cases highly inequitable and contrary to the natural intention of the testators. Remedial legislation in several states followed. In 1942 the Supreme Court of the United States upheld the New York apportionment act, *Ch. 709, Laws of 1930*, against the objection of conflict with federal law, saying that applicable state laws should govern the ultimate impact of the federal tax. *Riggs v. Del Drago*, 317 *U.S.* 95, 63 *S.Ct.* 109, 87 *L.Ed.* 106, 142 *A.L.R.* 1131. The reasoning of the earlier state cases was disapproved.

■ The purpose and effect of these apportionment acts, including our own, is to announce a rule that as among the beneficiaries of the taxable estate of the testator the burden of the estate tax shall be equally borne. It is a rule of law—not of construction. The testator may ordain otherwise; but if he fails to do so the act governs.

What is this rule of law embodied in the statute? Clearly, it is nothing more than the doctrine of equitable contribution—itself but an application of the ancient maxim "equality is equity". See *Pomeroy's Equity (5th Ed.), Secs.* 405–412. That this doctrine

is a part of the law of Delaware admits of no doubt. In *Eliason v. Eliason*, 3 *Del.Ch.* 260, the testator had charged all his real estate with a right of dower in his widow. The dower was assigned from houses and lots in the residuary estate, other real estate devised to the son being exempt. Upon a bill filed by the residuary devisees against the son, equitable contribution was ordered. Chancellor Bates said:

"If Mrs. Eliason's right of dower was a common charge or burden on all the lands devised, then the residuary devisees, having borne, out of their lands, the charge to which the whole was liable, the case is already within the reason and equity of the doctrine of contribution, as that doctrine has been held from great antiquity. The principle is, that parties having a common interest in a subject-matter shall bear equally any burden affecting it. *Qui sentit commodum sentire debet et onus.* Equality is equity. One shall not bear a common burden in ease of the rest. Hence, if as often may be done, a lien, charge or burden of any kind, affecting several, is enforced at law against one only, he should receive from the rest what he has paid or discharged on their behalf. This is the doctrine of equitable contribution, resting upon as simple a principle of natural justice as can be put. * * * Its most common application is to sureties and to owners of several parcels of land, subject to a lien or charge for the payment of money. But as is declared by Lord Redesdale, in *Sterling v. Forrester*, 3 *Bligh*, 59, the principle is universal." 3 *Del.Ch.* 263.

The Chancellor added:

"Adverting now to the present case, certainly it can make no difference as to the natural equity of the complainants to contribution, that the common charge here is a right of dower, and not, as in ordinary cases, a money demand, such as a judgment or mortgage." 3 *Del.Ch.* 264.

So here, we think, it makes no difference to equity that the common charge is that of a tax lien imposed by the federal government. That it is a common charge or burden is admitted. From the moment of the death of the decedent all of the assets of the "gross estate" were subject to a lien in favor of the United States for the payment of all federal estate taxes. *Internal Revenue Code, Sec.* 827(a), 26 *U.S.C.A.* § 827(a). To the extent that the corpus of the 1930 trust was includible in the gross estate, the burden of that lien was shared by the beneficiaries of the trust. *Detroit Bank v. U. S.*, 317 *U.S.* 329, 63 *S.Ct.* 297, 87 *L.Ed.* 304. And the United States could have proceeded directly against the trust assets for the collection of the tax, without first proceeding against the executors.

*Equitable Trust Co. v. Commissioner*, 13 *T.C.* 731. Moreover, the amount of the federal lien included the amount of the Delaware estate tax, which is a tax substantially equivalent to the amount of credit allowable by the Internal Revenue Code against payment of the federal tax. *Rev.Code of Del.* 1935, *Par.* 143. Thus payment of the Delaware estate tax is a payment in discharge of the common burden imposed by the federal estate tax laws.

We are of opinion that, upon payment from the assets of the probate estate of all estate taxes levied on the probate and non-probate estate as a whole, the doctrine of equitable contribution may be invoked by the executors to effect an equitable distribution of the tax burden.

There is ample authority elsewhere for this conclusion. The following decisions hold that equitable principles require apportionment of estate taxes notwithstanding no statutory authority therefor exists: *Industrial Trust Co. v. Budlong*, 1950, 77 *R.I.* 428, 76 *A.2d* 600; *Pearcy v. Citizens Bank & Trust Co.*, 1951, 121 *Ind.App.* 136, 96 *N.E.2d* 918; *McDougall v. Central Nat. Bank*, 1952, 157 *Ohio St.* 45, 104 *N.E.2d* 441; *Trimble v. Hatcher's Ex'rs*, 1943, 295 *Ky.* 178, 173 *S.W.2d* 985; *Regents of University System of Georgia v. Trust Co. of Georgia*, 1942, 194 *Ga.* 255, 21 *S.E.2d* 691.

The bearing of this conclusion upon the reasoning of the *Richards* case, and upon defendants' contention, is obvious. The apportionment act did not change the law; it declared as law a principle theretofore firmly embedded in our jurisprudence. In so doing, the General Assembly may have been moved to resolve the doubt created by the opinion of many members of the bar that the rule of the earlier state decisions was the law of Delaware; perhaps the legislative intent was merely to provide a simple formula for apportionment and an expeditious remedy. Whatever the reason, it is clear to us that the effect of the statute is to declare the law as it existed, provide such a formula, and confer ample equitable jurisdiction upon the Orphans' Court to administer the statute. That concurrent jurisdiction exists in the Court of Chancery is no bar to the legislative will. *Del.Const. Art. IV, Sec.* 20; and cf. *DuPont v. DuPont*, 32 *Del.Ch.* 413, 85 *A.2d* 724.

Now, it is plain that if the apportionment act does nothing more than to declare as law a principle of equity theretofore existing and to provide a means for its enforcement, it cannot be held unconstitutional merely because in its terms it applies to the estates of decedents dying prior to the date of its enactment or to *inter vivos* transfers made during the lifetime of the decedent. Such a statute destroys no vested rights, since it only affirms an existing liability. See the following cases: *In re Gato's Estate*, 1950, 276 *App.Div.* 651, 97 *N.Y.S.2d* 171; *In re Ryle's, Estate*, 1939, 170 *Misc.* 450, 10 *N.Y.S.2d* 597; *Horwitt v. Howitt, (D.C.Conn.)* 1950, 90 *F.Supp.* 528; *In re Mellon's Estate*, 1943, 347 *Pa.* 520, 32 *A.2d* 749; *In re Stadtfeld's Estate*, 1948, 359 *Pa.* 147, 58 *A.2d* 478.

It is to be observed that the principal upon which our conclusion is based—the doctrine of equitable contribution—was not called to the attention of President Judge Harrington in the *Richards* case. All of the counsel appearing in that case seem to have assumed, as above indicated, that the law of Delaware was that declared in early decisions in other states, i. e., that the burden of all estate taxes must fall upon the testator's residuary estate. This assumption we have examined and found to be erroneous.

We note also that the *Parlato* case, upon which the reasoning in the *Richards* case is founded, was expressly disapproved by the District Court of Connecticut in *Horwitt v. Horwitt, supra,* and appears not to have been followed elsewhere.

The *Richards* case is therefore overruled.

The conclusion that we have reached, and the reasoning upon which it is based, necessarily dispose adversely of two subsidiary arguments advanced by defendants. First, it is said that at the time when the testator made his will, and at all times prior to his death, the law of Delaware imposed liability upon the residuary estate for the payment of all estate taxes. *Delaware Trust 'Co. v. Blackstone, 32 Del.Ch.* 130, 81 *A.2d* 126, is cited. Therefore, say the defendants, even if the will is silent upon the matter the testator must be assumed to have intended the result contemplated by the law; hence, an intent that his residuary estate should bear the burden of all estate taxes must be presumed as a matter of law.

It is also said that to apply the apportionment act to estates of decedents dying prior to the date of its enactment discriminates against such decedents because it changes arbitrarily such presumed intent of the testator in the absence of specific direction, and thus denies to such decedents the equal protection of the laws.

Both of these arguments are founded upon the assertion that the law of Delaware, prior to the enactment of the apportionment act, was contrary to the principle embodied in the act. Since we have concluded otherwise, both arguments fall. The *Blackstone* case affords no support to defendants' argument. The question before the court was whether the testator specifically intended that his residuary estate should bear the burden of all estate taxes, and it was held that he had so intended. The reference to the state of the law prior to the enactment of the apportionment act was derived from the assumptions made by court and counsel in the *Richards* case, which we have concluded was wrongly decided.

For the foregoing reasons we are of opinion that the application of the apportionment act to estate taxes imposed upon the gross estates of decedents dying prior to the date of its enactment does not contravene the provisions of the Fourteenth Amendment.

III.   There remains for consideration defendants' final argument that even if the apportionment act applies to the case the amount of recovery from the trustee of the 1930 trust should be limited to an equitable proportion of those amounts of tax, and those only, that were paid after the date of the enactment of the statute.

This contention is based on the introductory language of *Section 1(a)* of the act, the pertinent part of which reads:

"Whenever it appears upon any accounting * * * that an executor * * * has *after the effective date of this Act* paid an estate tax * *. * upon or with respect to any property required to be included in the gross estate of a decedent * * *, *the amount of the tax so paid* shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." (Emphasis defendants'.)

Defendants say that the required proration is in terms limited to "the amount of the tax so paid" and that the amount "so paid" is the amount paid "after the effective date" of the act. This amount is the sum of $3,119,574.35, and (applying the statutory formula) $22.98179305\%$ thereof is $716,934.12, which, say the defendants, is the extent of the trustee's liability to apportionment.

The executors reply that the tax is not "paid" until it is paid in full and the lien discharged; that the "tax so paid" means the full amount of the tax; and that the phrase "after the effective date of this Act" was inserted after the original bill had been introduced in the General Assembly and was so included for the express purpose of making the act applicable to any estate which had not been finally closed by the full payment of estate taxes and the discharge of the lien.

The question is not free from difficulty. The executors' argument that the phrase "has after the effective date of this Act paid an estate tax" contemplates payment in full could readily be accepted but for the succeeding phrase that "the amount * * * *so paid*" shall be equitably prorated. At first reading this language seems to say that the amount actually paid after the effective date of the act (and that amount only) shall be prorated.

But a consideration of the basic principle underlying the act reveals the unsoundness of this contention. This principle, as we have shown, is that of equitable contribution. Now the statutory formula for apportionment of the tax cannot be applied to a part only of the total tax without producing an inequitable result. Because of the progressively increasing rates of the federal estate tax, and because the tax is imposed as an entirety upon the gross estate as an entirety, it is manifestly not feasible to attempt to compute the share of the tax which any particular transferee or beneficiary must bear by applying a particular rate of tax to the value of that share. Hence the statute provides a formula dependent upon (1) the value of such share and (2) the value of the total gross estate. Such a formula, if it is to achieve the equitable result required by the statute, must be applied to the total tax. In the instant case the payments made by the executors prior to April 2, 1947, benefited alike the beneficiaries of the testamentary

estate and the beneficiaries of the trust. To ignore these payments in apportioning the common burden would be unjust.

It is further to be observed that the defendants' contention would impute to the legislature an intent to limit the application of equitable apportionment by a circumstance which is largely accidental, that is, the dates of payments of installments on account of the tax. It is common knowledge that the settlement of estate taxes due from large estates frequently entails differences with the taxing authorities in respect of questions of the inclusion of non-probate assets in the gross estate, questions of valuation, and the like. The payment of additional installments of tax, after the required initial payment, often occurs. The dates of such payments are dictated by considerations wholly unrelated to the end sought to be achieved by the statute, which is an overall determination of the entire tax liability according to equitable principles. We think, therefore, that when the statute speaks of the payment and proration of a tax assessed upon or with respect to any property required to be included in the gross estate, it refers to the entire tax paid upon the entire estate. *Cf. In re Jeffery's Estate*, 333 *Pa.* 15, 3 *A.2d* 393, and *In re Gato's Estate, supra.*

Moreover, if defendants' argument be accepted, what is the result? We have held that in the circumstances of this case apportionment may be had in equity. Thus, if the power of the Orphans' Court be limited to an apportionment of the portion of the tax actually paid to the Collector after the date of the act, the executors might proceed in the Court of Chancery to compel an additional contribution. Such circuity of action could not have been intended. We think that the language inserted in our statute, referring to the payment of taxes "after the effective date of this Act", was inserted to express the legislative will that the remedy of apportionment in the Orphans' Court should be available in any case where the estate taxes had not been fully paid and discharged, and that the jurisdiction of the Orphans' Court should be defined accordingly. We do not think that a splitting of the total tax, and the proration of a part only, was intended.

We are of opinion that the executors are entitled to re-

cover an equitable proportion of all estate taxes, whether paid before or after the effective date of the act.

For the foregoing reasons the judgment of the court below is reversed and the cause is remanded for further proceedings in accordance with this opinion.